PEOPLE v VAIL

1. HOMICIDE—FIRST-DEGREE MURDER—ELEMENTS OF OFFENSE—BUR-
DEN OF PROOF.

The prosecution where first-degree murder is charged must prove
that the accused killed another wilfully, deliberately, with
premeditation and with malice aforethought except in in-
stances where a killing is committed by poison, lying in wait, or
in the perpetration or attempt to perpetrate certain enumer-
ated crimes (MCLA 750.316).

2. HOMICIDE—FIRST-DEGREE MURDER—PREMEDITATION—DELIBERATION
—DEFINITIONS.

Premeditation and deliberation connote a willfulness: to premedi-
tate is to think about beforehand; to deliberate is to measure
and to evaluate the major facets of a choice or problem.

3. HOMICIDE—FIRST-DEGREE MURDER—PREMEDITATION—DELIBERATION
—THOUGHT PROCESS—REFLECTION.

Premeditation and deliberation characterize a thought process

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 40 Am Jur 2d, Homicide §§ 44-52.
[4] 40 Am Jur 2d, Homicide §§ 246, 263.
[5] 40 Am Jur 2d, Homicide § 472.
[5, 6] Homicide: presumption of deliberation or premeditation from
the circumstances attending the killing. 96 ALR2d 1435.
[6] 40 Am Jur 2d, Homicide §§ 246, 263, 472.
[7] 40 Am Jur 2d, Homicide §§ 484, 485, 488, 489.
Scope and application of rule which permits judge in criminal case
to comment on weight or significance of evidence. 113 ALR 1308.
[8] 40 Am Jur 2d, Homicide §§ 267, 484, 485, 488, 489.
[9, 10] 40 Am Jur 2d, Homicide §§ 44, 53.
[11, 12, 14, 20] 40 Am Jur 2d, Homicide §§ 154, 155, 158, 480.
[13] 40 Am Jur 2d, Homicide §§ 541-548.
[15, 16, 21] 29 Am Jur 2d, Evidence § 320 *et seq.*
40 Am Jur 2d, Homicide §§ 264, 274, 310, 313 *et seq.*
[17] 40 Am Jur 2d, Homicide § 633.
[18] 47 Am Jur 2d, Juvenile Courts and Delinquent and Dependent
Children §§ 4, 8.
[19] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[20] 53 Am Jur, Trial § 464.
Comments of counsel as to credibility of witnesses. 127 ALR 1385.

undisturbed by hot blood; and while the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a "second look".

4. HOMICIDE—FIRST-DEGREE MURDER—PREMEDITATION—DELIBERATION
    —EVIDENCE—INFERENCES.
    Premeditation and deliberation may be reasonably inferred from all of the facts and circumstances surrounding a homicide.

5. HOMICIDE—FIRST-DEGREE MURDER—PREMEDITATION—DELIBERATION
    —EVIDENCE.
    A trier of fact may not properly consider a charge of first-degree murder where there is an absence of any evidence pertaining to premeditation or deliberation.

6. HOMICIDE—FIRST-DEGREE MURDER—MALICE AFORETHOUGHT—IN-
    FERENCE.
    The element of malice aforethought needed to support a charge of first-degree murder may be inferred where an act of killing has been proven.

7. HOMICIDE—FIRST-DEGREE MURDER—EVIDENCE—INSTRUCTIONS TO
    JURY—APPEAL AND ERROR.
    The duty of the Court of Appeals is to determine whether there was any evidence produced at trial to support the charge and not to weigh the credibility of the evidence as would a jury where on appeal an appellant alleges that the evidence adduced at trial was insufficient to support a charge of first-degree murder and that as a consequence the trial court erred by instructing the jury on such offense.

8. HOMICIDE—FIRST-DEGREE MURDER—EVIDENCE—SUFFICIENCY.
    Sufficient evidence was presented at a first-degree murder trial from which a jury could reasonably have inferred that the defendant acted wilfully, deliberately, with premeditation and with malice aforethought where testimony disclosed that the defendant during an armed robbery at his home told the victims he could kill them for trespassing, on the afternoon following the robbery an automobile containing four men, two of whom were victims of the robbery, stopped in front of defendant's home and defendant procured a rifle after learning one of the men had a shotgun, defendant fired at the automobile two or three minutes after a shotgun blast had been directed at his house, and while the vehicle was accelerating

away from the house, and there was no dispute that there was a killing, it would have been possible for a jury to reasonably conclude that there was sufficient time for the defendant to form the intent to kill and an opportunity for the defendant to reconsider and not fire the rifle.

9. HOMICIDE—SECOND-DEGREE MURDER—EVIDENCE—SUFFICIENCY.

There must be evidence that there was a killing, that the accused killed with malice aforethought but without premeditation and deliberation, that the accused formed the intent to kill upon a sudden provocation prior to and accompanying the act, and that such provocation did not foreclose the exercise of reason and thus reduce the crime from murder to manslaughter, to justify the submission of a second-degree murder charge to the trier of fact.

10. HOMICIDE—SECOND-DEGREE MURDER—EVIDENCE—SUFFICIENCY.

Sufficient evidence was presented at trial to justify a submission of a second-degree murder charge where it was not disputed that the defendant killed the deceased, who was a passenger in an automobile accompanying robbery victims back to the scene of an alleged armed robbery, there was testimony that the defendant threatened to kill his robbery victims the evening before the killing, and that defendant fired at an automobile in which the deceased was a passenger two or three minutes after a shotgun blast had been directed at his house and while the vehicle was accelerating away from the house; the jury could have reasonably determined that the shotgun blast did not foreclose the exercise of defendant's reason and that the defendant intentionally aimed the rifle at the auto intending to kill the occupants.

11. HOMICIDE—FIRST-DEGREE MURDER—SELF-DEFENSE—QUESTION OF FACT.

It is a question of fact for the jury to determine in a trial for first-degree murder whether or not an accused acted in self-defense.

12. CRIMINAL LAW—SELF-DEFENSE—EVIDENCE—SUFFICIENCY.

The sole question for the jury where a defendant interposes a claim of self-defense is whether the accused, under all of the circumstances of the assault as it appeared to him, honestly believed that he was in danger of his life, or suffering great bodily harm, and that it was necessary for him to do what he did in order to save himself from such apparent threatened danger.

13. EVIDENCE—SUFFICIENCY—JURY VERDICT.

A jury verdict is final where there is evidence introduced at trial which would justify the verdict.

14. HOMICIDE—FIRST-DEGREE MURDER—SELF-DEFENSE—EVIDENCE—SUFFICIENCY.

Evidence at a trial for first-degree murder was insufficient to support a defendant's contention that he acted in self-defense where the record disclosed that there was testimony from one witness to the effect that the defendant waited from two to three minutes after a shotgun blast from an automobile before returning fire, none of the passengers alighted from the automobile and came towards the defendant's home, and defendant did not discharge his rifle until after the vehicle was driving away; a jury could reasonably conclude that at the time defendant fired the rifle, it was not necessary to do so in order to save himself from the gunman.

15. HOMICIDE—FIRST-DEGREE MURDER—EVIDENCE—PRIOR ACTS—INSTRUCTIONS TO JURY.

A trial court in a first-degree murder trial properly denied a defendant's motion to exclude evidence of an alleged armed robbery in which defendant may have been involved and the prejudicial effect of such evidence did not outweigh its probative value where the prior relationship between the parties involved and the facts and circumstances surrounding the robbery were material in determining whether the accused killed with deliberation and premeditation and where the trial court correctly instructed the jury on the proper use of such evidence.

16. HOMICIDE—FIRST-DEGREE MURDER—DEFENSES—ACCIDENT—EVIDENCE—PRIOR ACTS—INSTRUCTIONS TO JURY.

The defense of accident interposed by a defendant charged with first-degree murder by rifle shot permits the introduction into evidence of any prior act or like acts on the part of the defendant tending to show a lack of accident, notwithstanding the fact such proofs would reveal the commission of a crime by the defendant and there was no error in the admission of such evidence where the court correctly instructed the jury on its proper use (MCLA 768.27).

17. WITNESSES—RES GESTAE—IMPEACHMENT.

A res gestae witness is subject to impeachment by the prosecution (MCLA 767.40a).

18. WITNESSES—JUVENILE RECORD—IMPEACHMENT.

A witness in a criminal case, who is not himself a defendant, may be impeached on the basis of his juvenile record.

19. TRIAL—PREJUDICIAL CONDUCT—OBJECTION—PRESERVING ISSUE.

The Court of Appeals will not entertain allegations of prejudicial trial conduct absent manifest prejudice unless an objection was raised below.

20. HOMICIDE—FIRST-DEGREE MURDER—PROSECUTOR'S REMARKS— SELF-DEFENSE—EVIDENCE.

A prosecutor's statement concerning a defendant's employment of self-defense made during opening argument in a first-degree murder trial neither interjected an imaginary defense nor so tainted the entire proceedings as to require a new trial where the people's proofs were bound to show that a shotgun blast was directed at the defendant's home shortly before the defendant fired his rifle towards an automobile in which the deceased was riding, because such proofs would immediately bring the claim of self-defense to mind, and where defense counsel made an opening argument to the jury that defendant fired in self-defense and that the killing was accidental.

21. CRIMINAL LAW—EVIDENCE—PRIOR CRIMES—ADMISSIBILITY—ACCIDENT.

Evidence that a defendant has committed other crimes is not admissible for the purpose of showing that the accused was more likely to have perpetrated the crime charged, but such evidence is admissible for the purpose of establishing lack of an accident where a defendant has proffered the defense of accident (MCLA 768.27).

Appeal from Oakland, Philip Pratt, J. Submitted Division 2 March 7, 1973, at Grand Rapids. (Docket No. 14986.) Decided September 25, 1973. Leave to appeal applied for.

George H. Vail was convicted of manslaughter. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, and *Frank R. Knox,* Chief Appellate Counsel, for the people.

*Douglas Chartrand,* for defendant on appeal.

Before: FITZGERALD, P. J., and T. M. BURNS and ADAMS,* JJ.

T. M. BURNS, J. Defendant was charged with first-degree murder.[1] After a six-day jury trial, he was convicted of the lesser included offense of manslaughter.[2] Defendant was subsequently sentenced to a term of from 7-1/2 to 15 years imprisonment on July 14, 1970. Upon a motion by the defendant, we granted leave to appeal in February of 1973.

The facts of the case are highly complex and stem from an alleged armed robbery perpetrated late in the evening of August 26, 1969, an alleged fire-bombing incident occurring in the early morning hours of August 27, 1969, and an alleged exchange of gunshots in the early afternoon of August 27, 1969. The evidence and testimony presented at trial was conflicting, and a detailed recital is required for a proper disposition of the questions raised by the defendant.

At trial a 16-year-old juvenile and friend of the defendant testified that at approximately 11 p.m. on August 26, 1969, he went to the defendant's home for a visit. The defendant, his wife, and children were present. The youth had subsequently been convicted of an armed robbery committed at the defendant's home on the evening of August 26, 1969. In response to the prosecutor's questions concerning the robbery, the witness gave answers which indicated the robbery did not take place. The jury was excused, the prosecution told

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA 750.316; MSA 28.548.

[2] MCLA 750.321; MSA 28.553.

the trial court of the juvenile's robbery conviction, and the witness was then declared hostile. On cross-examination by the prosecutor after the jury returned, the witness testified that on the night of August 26, 1969, one Ray accompanied by two men named Powley and Lichtenberg arrived at the defendant's home. The youth explained that when the men entered the residence he ordered them at gunpoint to lie on the floor and relieved them of their money. At the witness's direction, the trio crawled out of the house on their hands and knees, then walked away. The witness admitted that he had been convicted of the armed robbery in juvenile court but stated that the defendant was not in the room at the time of the robbery and that the defendant knew nothing about it. Later that same evening an individual identified by the witness as Brown arrived at the defendant's residence. Shortly thereafter at about 2 a.m., the defendant's house was fire-bombed. The juvenile continued his testimony and stated that he remained at the defendant's house through the night and into the next afternoon when an automobile was observed driving slowly past the house. There were four passengers. The vehicle backed up and stopped in front of the house. At this point either Brown or the defendant announced that someone in the car had a shotgun. Defendant went into the bedroom, procured an M-1 .30-caliber rifle, loaded it, went to the telephone, called the police, put the phone down, and went to the door. There was a shotgun blast from outside. Almost immediately thereafter a shot was fired from inside the house. Defendant's wife and children were not in the house at the time.

A victim of the armed robbery, Martin Ray, testified that as he and the other two individuals

entered the defendant's home both the juvenile and the defendant pulled guns and committed the robbery. In addition he stated that while he was lying on the floor during the robbery the defendant approached, put a gun in his face, and warned him not to try anything or he would shoot the three of them for trespassing. After the victims left the defendant's home, they telephoned the defendant and demanded their money back. The defendant allegedly responded that he neither knew them nor knew what they were talking about. Later that evening the witness related that he and a friend returned to the defendant's home and threw two one-quart gasoline fire bombs at the dwelling for the purpose of frightening the defendant into returning the money. The following day between noon and 1 p.m., the witness along with Powley, one Lockhart, and another person later identified as David Rivas, drove to the defendant's house. Rivas was armed with a 16-gauge sawed-off shotgun. The witness stated that he could see the defendant standing in the doorway and shouted at the defendant for a return of the money he allegedly had taken the night before. Upon receiving no response, they started to drive slowly away and Rivas, at the witness's command, fired the shotgun at the defendant's house. Immediately afterwards Rivas exclaimed that he had been shot. The witness stated the two shots were almost simultaneous.

The second victim of the armed robbery, William Powley, took the stand and testified as follows: On August 26, 1969, between 10 and 11 p.m., he accompanied two others to the defendant's home. They were invited into the house and told to lie on the floor. It was too dark to ascertain who gave the order; however, the witness explained

that the robber spoke with a deep southern accent. It should be noted at this juncture that the record unfortunately does not reflect whether either the defendant or the juvenile, both of whom testified at trial, spoke with a southern accent. The witness also explained that Litchenberg, a member of the victimized trio, had directed them to the defendant's residence. Other than the three victims, the witness stated there were two other persons in the house. The next afternoon the witness accompanied by Ray and two others unconnected with the robbery drove to the defendant's house. At the time of the exchange of gunfire between the occupants of the auto and the defendant, the witness stated the auto was stationary and started to move after Rivas said he was shot.

Another witness, Robert Lockhart, testified that although he was not involved in the armed robbery he accompanied Ray to the defendant's home for the purpose of fire-bombing the defendant's house in the early morning hours of August 27, 1969. On the afternoon of August 27, 1969, he drove Ray, Rivas, and Powley to the defendant's dwelling. The car pulled up in front of the house and Ray shouted for the occupant to bring out some money. An individual in the house asked "Who is it?" and Ray answered "It's Sharkey". Approximately five minutes elapsed, then at Ray's command Rivas shot at the house. The witness, who was driving the auto, quickly accelerated. A shot rang out, and Rivas announced he had been shot and asked to be taken to the hospital. The witness opined that the car only moved a few feet between the time of the first and second gunshot.

In addition William Brown, who had arrived at the defendant's home shortly after the alleged armed robbery and who remained on the premises

until the next afternoon, stated that he was at the defendant's house only a few minutes before it was fire-bombed and that during the bombing episode he heard a gunshot from the front room of the dwelling. The following afternoon he heard someone shouting from the street. Defendant told Brown and the juvenile to go to the dining room, pick up the telephone, and hold on to it. Brown stated that he heard a gunshot from outside and two or three minutes later a second gunshot from inside the dwelling. After the shotgun blast he heard the vehicle occupied by Ray, Powley, Lockhart, and Rivas accelerate. He then telephoned the Hazel Park police.

At trial defendant interposed the defenses of accident and self-defense. Defendant also took the stand in his own behalf. He denied any knowledge of an armed robbery at his residence. During the fire bombing incident defendant stated that he moved his wife and children to safety, grabbed his rifle, ran to the front room, tripped, and the gun discharged. The next morning he sent his wife and children away to a relative's home. When the automobile stopped in front of his house the afternoon of the 27th, he explained that he telephoned the police, told them that an auto was parked in front of his house, and that one of the men in the vehicle was armed with a sawed-off shotgun. He left the telephone and went to the door to get a better description of the vehicle. Defendant was carrying a rifle at the time. He related that as he appeared in the doorway, he was fired upon. He jumped back and the rifle discharged. Defendant estimated that only a single second elapsed between the two gunshots.

A neighbor living three doors away from the defendant testified that on the afternoon of August

27 she heard two gunshots, the first louder than the second and very close together. She also stated that the auto parked in front of the defendant's home moved after the second shot and not before.

The description of the vehicle carrying the quartet of gunmen was broadcast to police in the vicinity. At 1:20 p.m. an officer in a cruiser spotted the vehicle in question and pulled it over. Ray exited the vehicle and told the officer that one of the passengers had been shot. The officer approached the vehicle and discovered Rivas prostrate on the back seat suffering from a bullet wound in the back. An ambulance was immediately summoned, however, Rivas was pronounced dead on arrival at the hospital. After an examination of the vehicle, the police observed an oval-shaped bullet hole on the driver's side between the rear door and the rear end of the auto. In addition the police discovered a sawed-off shotgun in the vehicle.

On appeal defendant raises numerous allegations of error which we will discuss and decide in the manner presented below.

## I

First defendant argues that the evidence adduced at trial was insufficient to support a charge of first-degree murder and that as a consequence the trial court erred by instructing the jury on this offense. See *People v Marshall,* 366 Mich 498; 115 NW2d 309 (1962).

Aside from instances wherein a killing is committed by poison, lying in wait, or in the perpetration or attempt to perpetrate certain enumerated crimes,[3] the prosecution, where first-degree murder

---

[3] The specified crimes are: arson, rape, robbery, burglary, larceny of any kind, extortion or kidnapping. MCLA 750.316; MSA 28.548.

is charged, must prove that the accused killed another willfully, deliberately, with premeditation and with malice aforethought. MCLA 750.316; MSA 28.548, *People v Morrin,* 31 Mich App 301; 187 NW2d 434 (1971), *leave to appeal denied* 385 Mich 775 (1971).

Premeditation and deliberation connote a willfulness and are defined as follows:

"To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem. As a number of courts have pointed out, premeditation and deliberation characterize a thought process undisturbed by hot blood. While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look'." *People v Morrin, supra,* pp 329–330; 187 NW2d p 449.

Premeditation and deliberation may be reasonably inferred from all of the facts and circumstances surrounding a homicide. *People v Morrin, supra.* However where there is an absence of any evidence pertaining to premeditation or deliberation, it is improper for the trier of fact to consider a charge of first-degree murder. *People v Meier,* 47 Mich App 179; 209 NW2d 311 (1973). The element of malice aforethought may be inferred where an act of killing has been proven. *People v Morrin, supra.*

The facts and circumstances of the present case embody a series of interrelated transactions beginning with the alleged armed robbery of three men at the defendant's home on the evening of August 26, 1969, and culminating with the death of David Rivas, the following afternoon. The evidence produced at trial was conflicting. However it is not

our task to weigh the credibility of this evidence as would a jury, but rather our duty is to determine whether there was any evidence produced at trial to support a charge of first-degree murder.

The testimony adduced at trial pertaining to the defendant's deliberation and premeditation may be capsulized as follows: The defendant during the course of the armed robbery at his home told the victims he could kill them for trespassing. On the afternoon following the robbery a vehicle containing four men drove up in front of the defendant's home. Someone in the defendant's house stated that one of the individuals in the auto had a shotgun. The defendant procured a rifle. A passenger in the vehicle shouted instructions to the defendant to return the money taken on the previous evening. Defendant appeared in the doorway. A shotgun blast from the vehicle was directed at the defendant's residence. One witness who was in the defendant's home at the time testified that there was a lapse of from two to three minutes before the defendant returned fire. The vehicle was accelerating away from the defendant's home at the time he fired the fatal shot. From this evidence it is our opinion that it would have been possible for a jury to reasonably conclude that since there was a two or three minute interval between the shots and inasmuch as the vehicle from which the shotgun blast was fired was driving away from the defendant's residence, there was sufficient time for the defendant to form the intent to kill and an opportunity for the defendant to reconsider the matter and not fire the rifle. Therefore sufficient evidence was presented from which a jury could reasonably have inferred that the defendant acted willfully, deliberately and with premeditation.

That there was a killing is undisputed. Accordingly, it would have been permissible for a jury to have found that the defendant acted with malice aforethought. *People v Morrin, supra.*

In view of the foregoing, we hold that there was evidence presented at trial which, if believed by the jury, was sufficient to find that the defendant committed the killing in question willfully, deliberately, with premeditation and with malice aforethought. Consequently, the trial court did not err by submitting the first-degree murder charge to the jury.

## II

Next defendant similarly contends that there was insufficient evidence presented at trial to support a charge of second-degree murder and that as a result the trial court erred by instructing the jury in this offense.

To justify the submission of a second-degree murder charge to the trier of fact there must be evidence that there was a killing, that the accused killed with malice aforethought but without premeditation and deliberation, that the accused formed the intent to kill upon a sudden provocation prior to and accompanying the act, and that such provocation did not foreclose the exercise of reason and thus reduce the crime from murder to manslaughter. *People v Dawson,* 29 Mich App 488; 185 NW2d 581 (1971), quoting 3 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1639, pp 1973–1974; MCLA 750.317, MSA 28.549.

As previously recounted it is not disputed that the defendant killed David Rivas. As a result it would have been permissible for a jury to find that the defendant acted with malice aforethought.

*People v Morrin, supra.* There was testimony that the defendant threatened to kill the three robbery victims the preceding evening. It is immaterial that the defendant did not kill one of the victims but rather killed a passenger in a vehicle who was accompanying a victim back to the scene of the alleged armed robbery. *People v Hodges,* 196 Mich 546; 162 NW 966 (1917). There was evidence of a sudden provocation, *i.e.* the shotgun blast directed towards the defendant's residence. From testimony by witness Brown, who was in the defendant's dwelling at the time the shots were fired, that two or three minutes elapsed between the shotgun blast and the defendant's rifle shot, the jury could have reasonably determined that the shotgun blast did not foreclose the exercise of defendant's reason and that the defendant intentionally aimed the rifle at the auto intending to kill the occupants. Therefore we find that evidence was presented which, if believed by a jury, would support a charge of second-degree murder. Accordingly, the trial court did not err by instructing the jury on second-degree murder.

### III

In response to the first-degree murder charge brought by the prosecution, defendant claimed he acted in self-defense. It is the defendant's position on appeal that the trial court erred, under the facts of the case, by refusing to grant defense counsel's motion for a dismissal of the charges on this basis. Defendant's argument requires only brief comment.

Whether or not an accused acted in self-defense is a question of fact for the jury to determine. The sole question for the jury where the defendant interposes a claim of self-defense is whether "the

accused, under all of the circumstances of the assault as it appeared to him, honestly believe[d] that he was in danger of his life, or suffering great bodily harm, and that it was necessary for him to do what he did in order to save himself from such apparent threatened danger". 1 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 26, pp 47–48. Moreover, where there is evidence introduced at trial which would justify the jury's verdict, that verdict is final. *People v Harper,* 43 Mich App 500, 509; 204 NW2d 263, 268–269 (1972), *leave to appeal denied* 389 Mich 759 (1973).

It is patent from the guilty verdict that the jury did not believe the defendant acted in self-defense. Thus our question narrows to whether there was evidence presented at trial to support that verdict. A review of the record discloses that there was testimony from one witness to the effect that the defendant waited from two to three minutes after the shotgun blast before returning fire, none of the passengers alighted from the automobile and came towards defendant's home, and that defendant did not discharge his rifle until after the vehicle from which the shotgun blast came was driving away. From this evidence a jury could reasonably conclude, as it apparently did, that at the time defendant fired the rifle, it was not necessary to do so in order to save himself from the gunman.

We hold, therefore, that there was evidence to support the jury's verdict and that the trial court did not err by referring the question of defendant's self-defense to the jury.

IV

Defendant next asserts that the trial court reversibly erred by denying a defense motion to exclude any evidence and testimony concerning

the alleged armed robbery. Defendant contends that the prejudicial effect of this evidence far outweighed its probative value.

Where as here a defendant is charged with first-degree murder, the prior relationship between the parties involved and the facts and circumstances surrounding the crime are material in determining whether the accused killed with deliberation and premeditation. *People v Morrin, supra, People v Meier, supra.* The defense of accident interposed by the defendant would also permit the introduction into evidence of any prior act or like acts on the part of the defendant tending to show a lack of accident, notwithstanding the fact such proofs would reveal the commission of a crime by the defendant. MCLA 768.27; MSA 28.1050.

As noted earlier the alleged armed robbery was closely intertwined with the subsequent shooting. The testimony concerning the armed robbery revealed the character of the relationship among those involved in the shoot-out. The threat allegedly made by the defendant during the course of the robbery was, in addition, indicative of the defendant's state of mind and bore upon the question of whether the shooting was an accident. Furthermore the trial court carefully and correctly instructed the jury on the proper use of such evidence.[4]

We hold, therefore, that the trial court did not

---

[4] The trial court's instructions on this point read as follows: "There's also been testimony regarding an alleged robbery armed and an alleged fire bombing and arson. The purpose in allowing such evidence is to assure you all the pertinent information and evidence available that you could comprehend the entire picture; however, let me caution you that we are not trying here a case of robbery armed or arson. There's no need that these offenses, if any, be proven. You may, however, consider that testimony in evidence only insofar as it relates to the state of mind of the defendant's intent, motive, or purpose; both as it relates to the people's case and to his own defense."

err by denying defense counsel's motion to exclude evidence of an armed robbery and that the prejudicial effect of such evidence did not outweigh its probative value.

## V

Defendant complains that the trial court reversibly erred by permitting the prosecution to impeach the credibility of the juvenile witness by reference to his juvenile record.

The juvenile witness testified he was present in the defendant's home during the armed robbery, fire bombing, and subsequent shooting. The juvenile was, therefore, a res gestae witness and subject to impeachment by the prosecution. MCLA 767.40a; MSA 28.980(1).

In response to a question by the prosecutor, the witness admitted being convicted in juvenile court for the armed robbery allegedly perpetrated at the defendant's dwelling.

We find no error. A witness in a criminal case, who is not himself a defendant, may be impeached on the basis of a juvenile record. *People v Glover,* 47 Mich App 454; 209 NW2d 533 (1973); *People v Basemore,* 36 Mich App 256; 193 NW2d 335 (1971); *People v Davies,* 34 Mich App 19; 190 NW2d 694 (1971).

## VI

During opening argument the prosecutor stated: "I believe in the way of defense *[sic]* [the defendant] will claim self-defense". Defendant argues that the foregoing statement was outside the bounds of a proper opening statement, highly prejudicial, and forced the employment of a claim of self-defense.

No objection was voiced to the prosecutor's statement concerning self-defense. It is axiomatic that absent manifest prejudice, we will not entertain allegations of prejudicial trial conduct unless an objection was raised thereto below. Inasmuch as there was no objection, our review is limited to ascertaining whether the statement complained of was unduly prejudicial to the defendant.

The scope of opening statements is governed by GCR 1963, 507.1 which reads in pertinent part:

"Opening Statements. Before the introduction of any evidence, the attorney for the party who is to commence the evidence shall make a full and fair statement of his case and the facts he intends to prove."

In *People v Montague,* 71 Mich 447; 39 NW 585 (1888), the prosecution was criticized for interjecting inflammatory statements and an imaginary proposed defense during the course of its opening argument.

Clearly the prosecution's statement in the instant case can in no manner be classified as inflammatory. Although we recognize the interjection of an imaginary defense during the people's opening argument would in some cases prejudice the defendant by forcing defense counsel to employ such a defense, such is not the case here.

After the prosecution's opening argument, defense counsel made a spirited opening argument to the jury and argued at length that the defendant fired in self-defense and that the killing was an accident. The prosecutor could not with certainty foretell that defense counsel would employ a claim of self-defense. However since the people's proofs were bound to show that a shotgun blast was directed at the defendant's home, defendant's claim of self-defense would immediately spring to

mind. The practice of the prosecutor outlining an accused's defense during opening argument is fraught with many dangers and should not be encouraged. However under the facts of this case we find that the prosecution's statement concerning the employment of self-defense neither interjected an imaginary defense nor so tainted the entire proceedings as to require a new trial.

## VII

Finally defendant argues that it was reversible error for the prosecutor to cross-examine the defendant by framing a line of questions in terms of the defendant's assaultive nature.

The colloquy at trial between the prosecutor and the defendant concerning defendant's assaultive nature reads as follows:

"*Q. (by Mr. Murphy, continuing):* Would you describe yourself as a person having an assaultive nature?

"*A.* No.

"*Q.* Directing your attention to October twenty fifth in the year 1964, were you then convicted with an assault with intent to have carnal knowledge of a female minor?

"*A.* Yes, I was.

"*Q.* Directing your attention to 9-2-1965, one year later, were you then convicted with an assault with intent to commit rape?

"*A.* No, it was carnal knowledge that I was convicted of.

"*Q.* That was on 10-26-64, is that correct?

"*A.* That I was convicted?

"*Q.* Yes.

"*A.* I believe it was '65, August of '65 or September.

"*Q.* Let me rephrase my question. On October 26th in the year 1964 were you convicted of assault with intent to have carnal knowledge of a female minor?

"*A.* No.

"*Q.* You were not?

"*A.* I believe it was '65 that I was convicted. '64 I was arrested.

"*Q.* In 9-2-65 were you convicted with assault to commit rape?

"*A.* No.

"*Q.* Your name is George Vail, isn't it?

"*A.* 9-2? Yes, it must have been 9-2, yes.

"*Q.* You remember now?

"*A.* 9-2, yes.

"*Q.* You're not an assaultive person, is that correct?

"*A.* No, I am not."

Evidence that a defendant has committed other crimes is not admissible for the purpose of showing that the accused was more likely to have perpetrated the crime charged. 1 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 446, p 549. However, evidence that a defendant has committed prior crimes is admissible for the purpose of establishing, among other things, lack of an accident. MCLA 768.27; MSA 28.1050.

In the present case defendant proffered the defense of accident. Thus the question of whether the shooting was an accident was material. After a thorough review of the record and the testimony quoted above, we are persuaded that the evidence of defendant's prior convictions was introduced for the purpose of showing a lack of accident on the defendant's part, and was not introduced for the improper purpose of establishing that the defendant was more likely to have committed the crime charged.

For all of the reasons delineated above, defendant's conviction is affirmed.

All concurred.