PEOPLE v KING

1. CRIMINAL LAW—EVIDENCE—HEARSAY—RES GESTAE EXCEPTION—
   WITNESSES—EYEWITNESSES—HARMLESS ERROR—CROSS-EXAMINA-
   TION.

   A police officer's testimony in a murder trial of the description of
   assailants given to him by an eyewitness comes within the res
   gestae exception to the hearsay rule; any possible error in the
   admission of this testimony is harmless and moot where the
   eyewitness personally testified and was subject to cross-exami-
   nation.

2. WITNESSES—RES GESTAE WITNESSES—CRIMINAL LAW—PROSECUTOR'S
   DUTY—IMPEACHMENT—STATUTES.

   The prosecution must call all res gestae witnesses; however, the
   prosecution may impeach a res gestae witness (MCLA 767.40a).

3. WITNESSES—RES GESTAE WITNESSES—CRIMINAL LAW.

   A witness who was present at a time and place near the crime,
   had knowledge of material information concerning events sur-
   rounding the crime, and was with the defendant near or at the
   time of the crime was a res gestae witness, regardless of what
   he may or may not have seen happen.

4. WITNESSES—IMPEACHMENT—PRIOR INCONSISTENT STATEMENTS.

   A prior inconsistent statement may be used to impeach a witness

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 21 Am Jur 2d, Criminal Law § 118.
[4] 58 Am Jur, Witnesses § 685 *et seq.*
[5] 75 Am Jur 2d, Trial § 906.
[6] 58 Am Jur, Witnesses § 817 *et seq.*
[7] 29 Am Jur 2d, Evidence §§ 166, 211.
  Modern status of rules against basing an inference upon an infer-
    ence or a presumption upon a presumption. 5 ALR3d 100.
[8–10] 58 Am Jur, Witnesses § 124.
[11] 30 Am Jur 2d, Evidence § 1086.
  75 Am Jur 2d, Trial §§ 336, 489.
[12, 15] 21 Am Jur 2d, Criminal Law § 494.
[13] 75 Am Jur 2d, Trial § 577.
[14] 75 Am Jur 2d, Trial §§ 166, 167, 708, 906.

who admitted making and signing the statement, even though the witness was unable to remember the specifics of the questions and the answers he gave.

5. CRIMINAL LAW—INSTRUCTIONS TO JURY—LIMITING INSTRUCTIONS—TIME WHEN INSTRUCTIONS GIVEN—APPEAL AND ERROR—STATUTES.

Failure to give a limiting instruction immediately upon request of the defense is not reversible error where a thorough and careful limiting instruction was given at the close of the trial, the evidence of defendant's guilt was overwhelming, defendant failed to show prejudice, any error was harmless beyond a reasonable doubt, and there was no miscarriage of justice (MCLA 769.26).

6. CRIMINAL LAW—EVIDENCE—PRELIMINARY EXAMINATION—WITNESSES—UNAVAILABILITY—DISCRETION—STATUTES.

Testimony taken at a preliminary examination may be used by the prosecution whenever the witness giving such testimony cannot, for any reason, be produced at the trial; the sufficiency of the prosecution's effort to establish the unavailability of a witness is a question for the trial judge and his determination will not be disturbed in the absence of an abuse of discretion (MCLA 768.26).

7. CRIMINAL LAW—EVIDENCE—CHAIN OF CUSTODY—WEIGHT OF EVIDENCE—ADMISSIBILITY.

An objection based on alleged deficiencies in the chain of custody of shell casings found at the scene of the crime and admitted in evidence is an objection to the weight and not the admissibility of the evidence.

8. WITNESSES—EXPERT WITNESSES—QUALIFICATIONS—DISCRETION.

Determination of the qualifications of an expert witness is made by the trial court and will be reversed only for an abuse of discretion.

9. WITNESSES—EXPERT WITNESSES—QUALIFICATIONS—FORMAL EDUCATION.

An expert witness does not have to have formal education; he may have acquired special knowledge concerning a subject by reason of his employment.

10. WITNESSES—EXPERT WITNESSES—BASIS OF OPINION—CROSS-EXAMINATION—COURT RULES.

The factual data upon which an expert witness has based his

opinion is not required to be presented on direct examination, it may be brought out on cross-examination (GCR 1963, 605).

11. CRIMINAL LAW—DIRECTED VERDICT—EVIDENCE—ELEMENTS OF OFFENSE.

A directed verdict of acquittal is proper only where no evidence at all, either direct or circumstantial, has been presented on each material element of the offense.

12. HOMICIDE—MURDER—FIRST-DEGREE MURDER—SECOND-DEGREE MURDER—LESSER INCLUDED OFFENSES—STATUTES.

Second-degree murder is a lesser included offense of first-degree murder (MCLA 750.316, 750.317).

13. CRIMINAL LAW—INSTRUCTIONS TO JURY—FORM OF INSTRUCTION—REQUESTED INSTRUCTIONS.

Failure to give an instruction requested by a defendant in the precise form sought is not reversible error where the substance of the requested instruction was given.

14. CRIMINAL LAW—INSTRUCTIONS TO JURY—UNANIMITY OF VERDICT—ADEQUACY OF INSTRUCTION—CASE PRECEDENT.

Failure to instruct the jury that their verdict must be unanimous is not reversible error where no objection was made and the balance of the instructions were adequate when measured by case precedent.

15. HOMICIDE—MURDER—FIRST-DEGREE MURDER—LESSER INCLUDED OFFENSES—INSTRUCTIONS TO JURY.

Exclusion from the jury's consideration of any included offenses other than second-degree murder, in a trial for first-degree murder, was proper where the facts did not warrant instructions on offenses other than second-degree murder, there was no evidence of sudden provocation, and defendant's theory was that he was not the person who shot the victim.

Appeal from Recorder's Court of Detroit, George W. Crockett, Jr., J. Submitted Division 1 November 14, 1974, at Detroit. (Docket No. 18279.) Decided February 11, 1975. Leave to appeal denied, 394 Mich 761.

Howard King, Jr., was convicted of second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training, and Appeals, and *Michael O. Lang,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant.

Before: BASHARA, P. J., and DANHOF and VAN VALKENBURG,* JJ.

DANHOF, J. Defendant was tried before a jury on a charge of first-degree murder, MCLA 750.316; MSA 28.548.[1] He was convicted of second-degree murder, MCLA 750.317; MSA 28.549, and sentenced to a term of from 20 to 30 years in prison. He appeals raising 13 allegations of error.

On September 21, 1972, at approximately 10 a.m. Ceola Webster was visited by the defendant at an apartment she shared with Elzra Johnson and another couple. Defendant accompanied her to a nearby market to cash a check. The market employed an armed security guard, one Ulysses Toney, who stopped them to ascertain if they had paid for their purchases. Upon leaving the store, the defendant asked Ceola Webster what time the store closed, and stated that he wanted the guard's gun.

Defendant returned to the apartment in the company of one Amos Grady at about 6 p.m. that evening carrying a rifle that he had obtained from Elzra Johnson's brother. He wiped the rifle and bullets clean of fingerprints. At about 7 p.m.,

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] The defendant was charged with "deliberate and premeditated killing", not with felony murder under the statute.

carrying the rifle, defendant left the apartment with Grady and Johnson.

Shortly after closing at 8 p.m. Ulysses Toney left the market wearing his guard uniform and proceeded up the street on foot. He had walked a short distance when he was shot numerous times by two men. As he lay on the sidewalk, his hat and handgun were taken. Two men were seen running from the area, one of them carrying a rifle, and the other a hat. Detroit police officers, who arrived at the scene at approximately 8:30 p.m., were given descriptions of the two assailants and discovered seven spent shell casings in the immediate area. Later comparison indicated that these casings had been fired from the rifle given to the defendant by Elzra Johnson's brother.

About 8:15 p.m. the defendant returned to the apartment breathing hard and exclaiming, "I got him, I got him, I hit him eight times". He was in the company of another person known as "Texas Slim". He was still carrying the rifle. Texas Slim had a guard's hat and a .38 caliber pistol. The occupant's of the apartment asked them to leave and they did so taking the weapons, but leaving the hat as a "souvenir". Ceola Webster put the hat in a garbage can.

At trial, the defense rested without offering any evidence, relying on the theory that the defendant was not one of the two men involved in the murder. The jury was instructed on second-degree murder as a lesser included offense, and they returned a verdict of guilty of that offense. The issues advanced by the defendant will be considered in the order raised.

## I

At trial, a police officer was permitted to testify

over objection to the description of the assailants given to him by an eyewitness who was called to the stand by the people, but not cross-examined by the defense. Defendant now claims that the admission of this testimony was a reversible violation of the hearsay rule. We disagree.

This testimony comes within the res gestae exception to the hearsay rule. *People v Solomon,* 47 Mich App 208, 213–214; 209 NW2d 257 (1973), *remanded on other grounds,* 391 Mich 767 (1974), citing *People v Ivory Thomas,* 14 Mich App 642; 165 NW2d 879 (1968). Moreover, any possible error is rendered harmless and moot by the fact that the eyewitness personally testified and was subject to cross-examination. *People v Rea,* 38 Mich App 141; 195 NW2d 809 (1972), *lv den,* 388 Mich 795 (1972).

II

The prosecution called Elzra Johnson who had been present in the apartment at all relevant times, whose brother gave defendant the rifle, and who left the apartment with the defendant on the night in question. He admitted making and signing a statement to the police shortly after the shooting, but claimed that he did not recall making many of the statements contained therein. The prosecution offered to let him examine the statement to refresh his memory; he replied that he could not read. Over objection, the prosecution was thereupon allowed to use, for purposes of impeachment, the witness's prior inconsistent statement to the police in which he stated that the defendant told him that he had shot the security guard. Most of the witness's statement was read for this purpose, and the defense moved for a mistrial, which was denied. Defendant argues that this was error. We disagree.

Elzra Johnson was a res gestae witness in this case. He was present at a time and place very near the crime and he had knowledge of material information concerning the events surrounding it. *People v Szymanski,* 52 Mich App 605; 218 NW2d 95 (1974). His presence in the company of the defendant near or at the time of the crime, regardless of what he may or may not have seen happen, is persuasive of his status as a res gestae witness. See *People v Harrison,* 44 Mich App 578; 205 NW2d 900 (1973), and the cases analyzed therein.

Because the prosecution was under an obligation to call him, the prosecution had the right to impeach this witness. MCLA 767.40a; MSA 28.980(1). The witness's response that he did not recall the questions and answers in his statement to the police, did not preclude the prosecution from using that prior inconsistent statement for purposes of impeachment. The witness recalls making the statement, he merely was unable to "remember the specifics of the individual questions and the answers he gave". *People v Coates,* 40 Mich App 212, 214; 198 NW2d 837 (1972). Consequently, as discussed in *Coates,* the rule in *People v Durkee,* 369 Mich 618; 120 NW2d 729 (1963), relied upon by the defendant here is not applicable.

### III

Defense counsel requested an instruction during the examination of witness Johnson cautioning the jury that the prior statement could be considered for purposes of impeachment only, and not as substantive evidence. The trial judge declined to give such an instruction at that time, but he did give a thorough and careful limiting instruction at

the conclusion of the trial. Defendant argues on appeal that it was reversible error to delay this instruction.

A similar argument was made in *People v Kelly,* 386 Mich 330; 192 NW2d 494 (1971). In that case, it was concluded that the failure of the trial court to immediately give a limiting instruction when the evidence was introduced, where the instruction was given as part of the final charge to the jury, did not constitute reversible error in the absence of a timely request or the miscarriage of justice. In so holding, the Supreme Court did not intend to promulgate a rule to the effect that reversible error results where an immediate cautionary instruction is requested, but not given. On the contrary, the Supreme Court in *Kelly* affirmed this Court's decision in which Judge O'HARA stated "We hold failure in this case to give instruction immediately upon admission of the testimony was not reversible error". *People v Kelly,* 26 Mich App 148, 159; 182 NW2d 8 (1970). This language appears in *People v Chism,* 390 Mich 104, 120; 211 NW2d 193 (1973), in which failure to give a limiting instruction at any time was held not to constitute reversible error where such an instruction was not requested. Therefore, while the better practice would be to give the limiting instruction immediately upon request of the defense, any error in the present case is harmless beyond a reasonable doubt in view of the fact that a proper instruction was given later, the evidence of defendant's guilt was overwhelming, and defendant is unable to show how he was prejudiced by the delay. The error complained of here has not resulted in a miscarriage of justice. MCLA 769.26; MSA 28.1096.

IV

Testimony of the other couple sharing the apart-

ment with Ceola Webster and Elzra Johnson was received at trial. The testimony of the husband was in the form of his preliminary-examination testimony, after the wife testified that he had died during the interim. Defendant objected in the lower court as he does here that this testimony constituted an insufficient showing to justify the admission of the prior testimony.

Testimony taken at a preliminary examination, "may be used by the prosecution whenever the witness giving such testimony cannot, for any reason, be produced at the trial". MCLA 768.26; MSA 28.1049. It was stated in *People v Boyles,* 11 Mich App 417, 422; 161 NW2d 448 (1968), and repeated in *People v Hairston,* 37 Mich App 65, 74; 194 NW2d 504 (1971): "The sufficiency of the showing of the prosecution's effort to establish the unavailability of a witness is a question for the trial judge and will not be disturbed in the absence of a showing of an abuse of discretion." Defendant did not allege at trial that the witness was alive, he does not so argue now. The trial judge did not abuse his discretion.

## V

Defendant objected to the admission into evidence of the seven shell casings found at the scene of the crime. He based his objection on the contention that a proper chain of custody had not been sufficiently established. He also argues that proof that the area had not been disturbed before the police arrived was inadequate to permit admission of the shell casings into evidence. He now contends that the trial court committed reversible error by not excluding the casings upon timely motion.

The objections raised by the defendant go to the weight of the evidence and not to its admissibility.

*People v Stanley Mitchell,* 37 Mich App 351, 356; 194 NW2d 514 (1971), *lv den,* 387 Mich 751 (1972); *People v Kremko,* 52 Mich App 565, 573; 218 NW2d 112 (1974). An adequate foundation was laid; the trial court did not err by admitting the shell casings into evidence.

## VI

A police ballistics expert testified that in his opinion the seven shell casings found at the scene were fired from the same rifle as were comparison casings given to the police by Elzra Johnson's sister-in-law. Defendant alleges that the officer was not properly qualified as an expert, and that the facts upon which he based his opinion were not detailed for the jury's evaluation. Therefore, defendant maintains that the trial court was in reversible error when ruling that the testimony was admissible.

Determination of the qualifications of an expert witness is made by the trial court, and this determination will be reversed only for an abuse of discretion. *People v June,* 34 Mich App 313; 191 NW2d 52 (1971). "One does not have to have formal education to be an expert, but may have acquired special knowledge concerning a subject by reason of his employment." *People v Charles Wilson,* 27 Mich App 171, 177; 183 NW2d 368 (1970), *lv den,* 384 Mich 840 (1971). The trial court did not abuse its discretion in allowing the officer's expert testimony.

The factual data upon which the expert based his opinion could have been brought out on cross-examination; it was not essential that this information be presented by the prosecution. GCR 1963, 605; *People v John Willie Williams,* 26 Mich App

218, 230; 182 NW2d 347 (1970); *People v Pepper,* 36 Mich App 437, 445; 194 NW2d 67 (1971).

## VII

Having rested without presenting any evidence, defendant moved for a directed verdict of acquittal claiming that the evidence was insufficient to permit reasonable minds to find the defendant guilty beyond a reasonable doubt. The defendant now contends that the trial court erred in denying this motion.

The sufficiency of the evidence is for the jury to evaluate. The prosecution presented evidence of each element of the crime. The trial court properly denied the motion. "A motion for a directed verdict of acquittal may only be granted where there is no evidence at all, either direct or circumstantial, on each´ material element of the offense charged. In the event the requisite evidence is presented, it is submitted to the trier of fact for a determination of whether such evidence established guilt beyond a reasonable doubt." (Citations omitted.) *People v Hodo,* 51 Mich App 628, 639; 215 NW2d 733 (1974).

## VIII

The trial court instructed the jury on second-degree murder over the defendant's request that such an instruction not be included, and that an instruction on manslaughter be given instead. Defendant argues that the trial court committed reversible error by giving this instruction. We disagree.

Defendant was charged under MCLA 750.316; MSA 28.548 which states:

"All *murder* which shall be perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate and premeditated killing, * * * shall be murder of the first degree, and shall be punished by solitary confinement at hard labor in the state prison for life." (Emphasis supplied.)

First-degree murder is a statutory crime. Dissenting opinion of Judge Levin (now Justice), *People v Allen,* 39 Mich App 483; 197 NW2d 874 (1972); opinion adopted by Supreme Court, *People v Allen,* 390 Mich 383; 212 NW2d 21 (1973). The statute states "all murder"; yet murder is not defined. Consequently, we must look to the common-law definition under which "Murder is criminal homicide committed with malice aforethought". Footnote 17, dissenting opinion, Judge Levin, *People v Allen,* supra, 39 Mich App 501; 197 NW2d 884. As Judge Levin stated:

"First-degree murder is a *statutory* crime; it is the common-law crime of murder with an added element. In order to aggravate the offense from second-degree (common-law) murder to first-degree (statutory) murder the murder must be 'perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate and premeditated killing, or * * * be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery, burglary, larceny of any kind, extortion or kidnapping'. MCLA 750.316; MSA 28.548." *People v Allen,* 39 Mich App 501–502; 197 NW2d 884.

Thus, the statutory crime of first-degree murder is a combination of common-law murder (or in Michigan second-degree murder) plus one of the added components. Therefore, since the people must first prove common-law or second-degree murder, it is obvious that second-degree murder is an included

offense whenever a person is charged as in this case with first-degree murder.

## IX

Two paragraphs concerning circumstantial evidence are extracted from the trial court's instruction and urged upon us as reversible error. The first paragraph is taken from 2 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 906, p 1216, Form No. 287. The second paragraph, almost identical to the first, is taken verbatim from *People v Foley,* 64 Mich 148, 160; 31 NW 94 (1887). Reading these paragraphs in context with the entire charge to the jury, we find no error.

## X

The jury was instructed that they must "be satisfied beyond a reasonable doubt as to the accuracy of the identification made by any witness" before the testimony is accepted. Defendant's objection to this instruction indicates that he misunderstood it. The extremely high standard imposed by the trial court on the identification testimony could only have been to defendant's advantage. Again, taking the charge as a whole, the Court's instruction was not erroneous. *People v McLott,* 55 Mich App 198; 222 NW2d 178 (1974).

## XI

Defendant objects to the trial court's refusal to give the last two paragraphs of defendant's requested instruction, claiming that in so doing, the court refused to instruct on his theory of the case. This argument is of no merit. The excluded para-

graphs do not reflect a proper defense theory. *People v Fred W Thomas,* 7 Mich App 519; 152 NW2d 166 (1967), *lv den,* 379 Mich 789 (1967). The theory of the defense was thoroughly and adequately explained to the jury in that part of the requested instruction which was given. An instruction need not be given in the precise language sought. It is sufficient if the substance of the requested instruction is included in the charge. *People v McLott, supra.*

## XII

The trial court neglected to instruct the jury that their verdict must be unanimous. This instruction should have been given. However, defense counsel made neither a request for such an instruction, nor an objection to its absence. Therefore, we decline to find reversible error inasmuch as the balance of the instruction satisfied the standard set forth in *People v King,* 51 Mich App 788, 792–793; 216 NW2d 76 (1974).

## XIII

Lastly, defendant argues that the trial court improperly excluded from the jury's consideration any included offenses less than second-degree murder. The facts of this case did not warrant an instruction on any lesser offense. There was no evidence that the defendant acted in response to a sudden provocation. *People v Vail,* 49 Mich App 578, 591–592; 212 NW2d 268 (1973). Defendant's theory of the case was that he was not the person who shot decedent. The prosecution argued that he had done so with premeditation and deliberation. Thus, there was no question of fact with regard to any element of first-degree murder that is not an

element of any lesser offense. *People v Stram,* 40 Mich App 249, 254; 198 NW2d 753 (1972), *lv den,* 388 Mich 796 (1972). Consequently, the trial court's instruction was not erroneous. *People v Thomas Jones,* 48 Mich App 470, 473; 210 NW2d 497 (1973).

Affirmed.