# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

THEODORE PAUL WAFER,

        Defendant-Appellant.

UNPUBLISHED
April 5, 2016

No. 324018
Wayne Circuit Court
LC No. 14-000152-FC

Before: STEPHENS, P.J., and HOEKSTRA and SERVITTO, JJ.

SERVITTO, J. (*dissenting in part and concurring in part*).

I respectfully dissent from the majority's conclusion that defendant's convictions for both statutory involuntary manslaughter and second-degree murder, arising from the death of one victim, do not violate the double jeopardy prohibition against multiple punishments for the same offense. In all other respects, I concur with the majority.

The majority sets forth the correct analysis to use in order to determine whether dual convictions violate the "multiple punishments" prohibition of double jeopardy. As stated in *People v Miller*, 498 Mich 13, 18; 869 NW2d 204 (2015), the multiple punishments strand of double jeopardy is not violated if the Legislature specifically authorizes cumulative punishment under two statutes. And, where the Legislature expresses a clear intention in a statute to prohibit multiple punishments, "it will be a violation of the multiple punishments strand for a trial court to cumulatively punish a defendant for both offenses in a single trial." *Id*. Thus:

> when considering whether two offenses are the "same offense" in the context of the multiple punishments strand of double jeopardy, we must first determine whether the statutory language evinces a legislative intent with regard to the permissibility of multiple punishments. If the legislative intent is clear, courts are required to abide by this intent. If, however, the legislative intent is not clear, courts must then apply the abstract legal elements test articulated in [*People v*] *Ream*[, 481 Mich 223; 750 NW2d 536 (2008)] to discern legislative intent. [*Miller*, 498 Mich at 19].

I disagree, however, with the majority's conclusion that neither the statute governing second degree murder, MCL 750.317, nor the statute governing involuntary manslaughter, MCL 750.329(1), plainly evince a legislative intent with respect to multiple punishments. Because of

-1-

my disagreement, I would further find that the test articulated in *Ream, supra*, need not be utilized.

MCL 750.317 states, simply, that "[a]ll other kinds of murder shall be murder of the second degree, and shall be punished by imprisonment in the state prison for life, or any term of years, in the discretion of the court trying the same." While this statute itself does not define what, exactly, constitutes second degree murder, or articulate the specific elements necessary to convict a defendant of the crime, it is long familiar that second degree murder finds its genesis in the common law. See, *People v King*, 58 Mich App 390, 401; 228 NW2d 391 (1975). Indeed, at common law, "murder" embraced all unlawful killing done with malice aforethought. *People v Scott*, 6 Mich 287, 292 (1859). As explained in *Scott*,

> Murder under our statute embraces every offense which would have been murder at common law, and it embraces no other crime. But murder is not always attended with the same degree of wicked design, or, to speak more accurately, with the same degree of malice. . . .
>
> The statute, recognizing the propriety of continuing to embrace within the same class all cases of malicious killing, has, nevertheless, divided these offenses into different grades for the purposes of punishment, visiting those which manifest deep malignity with the heaviest penalties known to our law, and punishing all the rest according to a sliding scale, reaching, in the discretion of the court, from a very moderate imprisonment to nearly the same degree of severity prescribed for those convicted of murder in the first degree. Each grade of murder embraces some cases where there is a direct intent to take life, and each grade also embraces offenses where the direct intent was to commit some other crime. . . .
>
> . . . we hold murder in the first degree to be that which is willful, deliberate, and premeditated, and all other murders to be murder in the second degree . . . .
>
> [*Scott*, 6 Mich at 292-294]

Thus, it is hardly a new principle that both at common law and today, one of the elements of second degree, or common-law, murder is malice. *People v Goecke*, 457 Mich 442, 463; 579 NW2d 868 (1998). The malice necessary to support second-degree murder "is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id*. at 466.

The manslaughter statute, MCL 750.329(1), provides that "[a] person who wounds, maims, or injures another person by discharging a firearm that is pointed or aimed intentionally but without malice at another person is guilty of manslaughter if the wounds, maiming, or injuries result in death." The clear language in MCL 750.329(1) clearly and specifically excludes a mens rea of malice. And, the common-law definition of manslaughter is "the unintentional killing of another committed with a lesser mens rea [than the malice required for murder] of gross negligence or an intent to injure[.]" *People v McMullan*, 284 Mich App 149,

152; 771 NW2d 810 (2009) (internal quotations and citation omitted), aff'd 488 Mich 922 (2010).

There would have been no need to add the limitation *"but without malice"* in the manslaughter statute had the Legislature intended to authorize dual punishments for both second degree murder and manslaughter under these circumstances. Rather, the Legislature would have simply remained silent on the mens rea element. The fact that it did not do so supports a conclusion that the Legislature expressed a clear intent in the manslaughter statute to prohibit multiple punishments for manslaughter and murder. See *Miller*, 498 Mich at 18. And, we must presume that the Legislature "knows of the existence of the common law when it acts." *People v Moreno*, 491 Mich 38, 46; 814 NW2d 624 (2012). Thus, in enacting the manslaughter statute, the Legislature was well aware that second degree murder, at common law and continuing today, required a malice element and expressly and purposely excluded this element from the manslaughter statute as a distinguishing feature.

Given the Legislature's awareness of the requisite element of malice for second degree murder and its express exclusion of a malice element in the manslaughter statute, I would find that the Legislature expressed a clear intent in MCL 750.329(1) to prohibit multiple punishments for these two crimes. Defendant's convictions of and punishments for both second degree murder and manslaughter in the death of one person thus violated the multiple punishments strand of double jeopardy. *Miller*, 498 Mich at 18. I would therefore vacate defendant's manslaughter conviction on double jeopardy grounds and, on remand, direct the trial to consider (in addition to the *Lockridge*[1] sentencing issue) what effect, if any, vacating the manslaughter conviction has on defendant's appropriate sentence.

/s/ Deborah A. Servitto

---

[1] *People v Lockridge*, 498 Mich 358; 870 NW2d 502(2015).

-3-