BROWN v. THE PEOPLE.

*Mandamus* ordered.

---

## William Brown v. The People.

*Felonious Homicide: Evidence of surrounding circumstances.* Where a person is accused of a felonious homicide, it is both the right and the duty of the prosecution to give evidence of all the circumstances surrounding the discovery of the body of deceased which have any bearing upon the manner of the death, and any tendency to show whether it was natural, accidental, or felonious.

Such evidence is a necessary preliminary to any which shall be offered to connect any particular person with the homicide.

*Witness: Corroborative testimony: Hearsay.* Where a witness had testified as to a certain fact existing on a certain day, another witness, for the purpose of fixing the date, was permitted to testify that he had been told by said witness of facts corroborating the statement: *Held,* that this evidence was inadmissible. Though offered for the purpose of fixing a date, its sole effect was to strengthen the statement of a witness in court by proving that he had made the same statement out of court; it was therefore objectionable, for all the reasons which exclude hearsay evidence generally.

*Alibi: Evidence: Rebutting testimony: Order of testimony.* The defendant gave evidence tending to show an *alibi.* To meet this the prosecution gave evidence tending to contradict it. To rebut this the defendant offered to prove that the witnesses for the prosecution were mistaken as to the time when an occurrence sworn to by them, and supposed to be inconsistent with the *alibi,* took place. This evidence was rejected by the court on the ground that the defendant should have given it as a part of his evidence in chief to establish the *alibi.*

*Held*, That the court erred in this ruling. This latter evidence formed no part of the *alibi*, and did not become material or relevant until after the prosecution had put in their evidence to contradict it. It then became the legal right of the defendant to rebut.

A defendant has always a right to suppose that evidence will be offered and received in its logical order, and he is not bound to meet it before it becomes relevant to the case.

It is not a matter of discretion with a court to reject evidence because it was not offered before the proper time for its admission.

*Heard October 22d.    Decided October 23d.*

Error to Ionia Circuit.

The plaintiff in error was convicted of the murder of one John Morse.

Several exceptions were taken to the rulings of the court, respecting the admission of certain evidence, all of which are stated in the opinion.

*S. B. Soule*, and *T. Romeyn*, for plaintiff in error.

1. It is error to admit immaterial evidence before a jury, and without regard to whether they are instructed afterwards to disregard it or not. — *13 Johns. 350; 15 Id. 240; 2 Cow. 436; 19 Wend. 232; 9 Barb. 618; 10 B. Mon. 16 ; 35 Miss. 165; 2 Texas, 257; 10 B. Mon. 316; 21 Pick. 142; 22 Id. 427, 457, 397; 33 N. H. 171; 38 Id. 318; 2 Fost. 457; 2 Aik. 276; 3 Smeed, 86; 1 Munf. 288; 32 N. Y. 141, 509; 19 Id. 299; 31 Ala. 53; 33 Miss. 118.*

2. It is the duty of the court to see to it that no mischief is done by the admission of incompetent evidence, and that the illegal evidence be wholly withdrawn, and withdrawn for every purpose. — *5 S. & R. 352; 1 Penn. 389; 31 Id. 196; 8 W. & S. 391; 24 Pick. 12; 9 Gray 408; 14 Mich. 260.*

In criminal causes the defendant in such causes can not by silence waive any of his rights. — *18 N. Y. 128; 16 Mich. 351.*

3. Evidence was introduced to sustain a witness previously sworn, by showing that he had stated the substance of his testimony to other persons.

This was not competent evidence; it was hearsay, and is not within any of the exceptions to that kind of testimony. *1 Greenlf. Ev.* §§ *98, 99; 7 Cranch, 290, 295; 1 Wheat. 6, 8; 3 T. R. 707.*

4. The defendant sought to sustain his *alibi* by offering proof in reply to the rebutting evidence of the People. The court rejected it. This was error.—*5 Allen (Mass.) 314; 32 Vt. (3 Shaw) 591; 28 Ga. 237; 8 Humph. 663.*

*G. V. N. Lothrop,* and *A. B. Morse,* for defendants in error.

1. The first error alleged was the proof admitted as to a peculiar smell observed at the stable at the time of the discovery of the body. There was evidence tending to show that the odor was that of chloroform.

This evidence was proper.

All the surrounding circumstances noticed at the time of the discovery of the body were proper evidence. Indeed, it would be censurable to withhold any one of any peculiarity. These circumstances furnish the foundation on which all subsequent investigation must proceed. Whether any given circumstance shall finally bear one way or the other, is of no consequence.

2. It is competent to sustain a witness by showing that he had stated to other parties at a given time the same thing sworn to by him. The question is not as to the truth of what was stated, but only the fact of its having been said, and when said.— *1 Dutch. 566; 1 Greenlf. Ev.* §§ *109, 123; 34 Vt. 604.*

3. It is well settled that a party entering on a matter should offer all his evidence relating to it. He can not rest, and, after the other side have replied, then resume and give further proof.— *1 Greenlf. Ev.* § *74; 2 Stark. 31; 11 Pick. 125.*

4. A new trial will not be granted because of evidence with reference to a future state of the case. And if evidence is admitted which can only become competent by the

introduction of other evidence, no exception lies unless it clearly appears that such further evidence was not introduced.— *30 Vt. 252; 27 Geo. 125; 4 Allen (Mass.) 22; Hilliard N. T. 324.*

COOLEY CH. J.

The plaintiff in error was convicted of the murder of one John Morse. The circumstances of the case were very peculiar. Morse, it appears, was found, on the morning of August 1, 1867, suspended by a strap around his neck, lifeless but still warm. The appearances indicated a suicide, but the theory of the prosecution was that he was first made insensible by other persons and then suspended, and the surroundings arranged to give these appearances. The first error alleged in the record, relates to the evidence of Henry J. Hall, who having found the body of the deceased, testified to its condition and surroundings, and thereupon, to quote from the record, " the counsel for the people claiming that John Morse was first made insensible by chloroform, and ,then hanged and killed, offered to prove by the witness that on the morning he found John Morse hanging in the stable, he smelled a peculiar smell about the stable and barn; to the admission of which evidence the counsel for the defendant did then and there object, on the ground that simply proposing to prove a peculiar smell was too vague and indefinite, and the counsel for the people then said they intended to show that the said smell was the odor of the chloroform; and the counsel for the defendant insisted upon the objection that the proposition was too vague and indefinite, and therefore irrelevant; and the said Circuit Judge overruled the objection, and the defendant's counsel then and there excepted. And the said Henry J. Hall testified that he smelled a peculiar smell, and did not know what it was like." Other similar evidence was allowed to be given by other witnesses, none of whom could tell at

the time what the odor was, but one of them testified that having smelled a bottle of what she was told was chloroform, some five months afterwards, she found that the odor was the same as that about the barn, on the morning in question. No further evidence was given on the subject, and it was not claimed that there was any testimony to indicate that the death was preceded by the administration of chloroform, beyond that above stated.

When the cause was given to the jury by the Circuit Judge, he did not instruct them to disregard the above evidence, nor was he requested to do so. The plaintiff in error claims that his objection was a valid one when taken, and that its force could not be avoided, except by evidence, subsequently in some way connecting him with the chloroform. The prosecution, on the other hand, claim that they had a right to give the evidence as a part of the circumstances surrounding the discovery of the body, whether it had any tendency to connect the plaintiff in error with the death or not; and they also claim that if it had been offered as one link in the chain of evidence connecting the plaintiff in error with the alleged homicide, it would nevertheless, at the time, have been admissible, and if they failed to follow it up by other evidence, the plaintiff in error should have requested the judge to instruct the jury to disregard it, and excepted to his ruling if he failed to do so; and that, not having done so, the record discloses no error of which he has put himself in position to complain.

When a person is accused of a felonious homicide, it is both the right and the duty of the prosecution to give evidence of all those surrounding facts and circumstances which have any bearing upon the manner of the death, and any tendency to show whether it was natural, accidental, or felonious, and if the latter, whether the deceased was *felo de se*, or died by the hand of another. It is both a right and a duty to give to the jury, by evidence, as complete a picture as possible of all the surroundings; and this

irrespective entirely of any question of subsequently connect-
ing the defendant with the transaction by other proofs. Such
evidence is a necessary preliminary to any which shall be
offered to connect any particular person with the homicide,
and the more full and complete the prosecution make it,
the better do they discharge their duty to the public, and,
if he is innocent, to the defendant also.

We have no doubt the evidence given in this case was
admissible as a part of this preliminary showing. From the
record, however, it does not appear to have been offered
with this view, but as a part of a chain of evidence to es-
tablish the theory that the defendant had employed chloro-
form to stupify Morse, and then hung him. When offered
for this purpose, but not in any manner followed up by
evidence to establish other links in the chain, we are not,
by any means, satisfied that the objection of the defendant
to its vague and inconclusive character, or rather to its
irrelevancy as an isolated fact bearing upon the question of
his guilt, did not hold good, without any subsequent re-
quest to have it stricken out or disregarded. As we have
found it necessary, on another ground, to order a new trial,
and it is not likely that this question will arise again in
the same form, we do not feel called upon to express a
definite opinion upon it; but, at the same time, we can not
avoid feeling that evidence thus introduced as bearing upon
the guilt of the accused, and accompanied with a declara-
tion which embodies the theory of the prosecution concern-
ing the case, is exceedingly liable to impress the jury to the
defendant's prejudice, especially if, in the subsequent pro-
ceedings in the case, it is treated as proper evidence to be
considered by the jury as tending to show the guilt of the
accused.

The same remarks will apply to the testimony of wit-
nesses concerning tracks discovered near the barn on the
morning in question, though possibly in respect to that tes-

timony there may be more room to claim that there was subsequent evidence from which the jury might connect the tracks with the defendant.

The next error alleged in the record relates to the testimony of Abner Wright. George Wright, a son of Abner, had testified that he saw Delos Race, who seems to have been supposed *particeps criminis*, with another person, at a certain point, where, if certain evidence introduced by defendant to establish an *alibi* was true, neither Race nor himself could have been, on the 1st of August in the evening. The date here became of the last importance, and, as the record says, for the purpose of fixing the date, Abner Wright was allowed to testify that George Wright told him, on the morning of August 2, that he saw Delos Race and another person the night before.

We are not satisfied that this evidence was admissible. It was not evidence which proved the date of an event to which the former witness had testified, but its only force was to corroborate the statement that the first witness had seen, at a certain time, the persons he now testified about, by showing that, on another occasion, he had said he saw them. This was the effect, whatever may have been its ostensible object. It was bolstering up his statement in court by proof of a like statement out of court; and it was therefore open to all the objections to which hearsay evidence is usually subject.— *Deshon v. Merchants Ins. Co.* 11 *Metc.* 199; 1 *Greenlf. Ev.* § 469; *Starkie Ev.* p. 187; *Rex v. Parker, 3 Doug.* 242; *Berkeley–Peerage Case, 2 Phill. Ev. 4th Ed.* ( *Cowen & Hill's notes* ) p. 974, note 2; *Robb. v. Hackley, 23 Wend.* 50; 2 *Russ. Cr.* 938-9, 763; 5 *Cow.* 314. We had occasion to consider a kindred point in *Detroit and Milwaukee R. R. Co. v. Van Steinburg, 17 Mich.* 99, and we think the evidence in this case was inadmissible, for reasons similar to those we then assigned.

The prosecution, also to disprove the *alibi*, introduced evidence to show that Delos Race was at the house of one

Rose on the afternoon of August 1; that he came there with John Hall between two and four o'clock, and went away a little before four. ·

To rebut this the defendant offered to prove by Hall and others, that he, Hall, was not at Rose's on the afternoon stated, but that he and Race were there a day or two previous.

This evidence was rejected on the ground that it ought to have been given by the defendant as a part of his affirmative proof to establish the *alibi*.

The court, we think, was in error in this ruling. Until Rose was put upon the stand, there was nothing in the case to make this evidence either proper or relevant. It was no part of the proof of the *alibi*, because it related to a time prior to the offense, and was not inconsistent with the presence of defendant at the time and place of the death. It was insisted on the argument that inasmuch as this case had once before been tried, so that the defendant was apprised what evidence would be offered, it was his duty to anticipate it, and he could not possibly have been taken by surprise. This, however, is not a question of surprise, but of the proper order of proof. The defendant had a right to suppose that evidence should be offered, and would be received in its logical order and sequence. He was not bound to offer evidence before it had become relevant to the case, nor could he rightfully conclude that, when its admissibility depended upon evidence to be given by the prosecution, the court would receive it before it had been made relevant by such other evidence being put in. It was also suggested that this being merely a question of the order of proof, the power of the judge presiding at the trial over it was discretionary. But it can never be a matter of discretion with a court to reject evidence because it was not offered before the proper time for its admission. When this evidence was offered, the defendant was entitled

to it as a matter of right, and not of mere favor; and the rejection was clearly an error.

The judgment must be reversed, and a new trial ordered.

The other Justices concurred.