WOODROW v JOHNS

1. DISCOVERY—REQUEST FOR ADMISSIONS—FAILURE TO ADMIT—COURT RULES.

Confronted with a proper request for admissions, a defendant was required to either (1) admit the truth of the statements, (2) deny their truth, (3) explain why he could not admit or deny them, or (4) object to them in writing; a defendant's failure to respond to a proper request for admissions constitutes an admission of the statements contained in the request (GCR 1963, 312.1).

2. WITNESSES—ADMISSIONS—EVIDENCE—COURT RULES.

Allowing a defendant to give testimony contradicting a statement which he was deemed to have admitted by failing to respond to a request for admissions was error where the plaintiffs' counsel properly objected (GCR 1963, 312.1).

3. WITNESSES—ADMISSIONS—EVIDENCE.

Allowing a defendant to testify contrary to his admission, over objection of a codefendant, was not reversible error where: the contradicted statement concerned a subordinate, tangential matter; one effect of the contradiction was helpful to the codefendant; the codefendant opened the door to the contradictory testimony; and the codefendant had the opportunity to call another witness to testify as to the accuracy of the testimony in question.

4. EVIDENCE—PRIOR CONSISTENT STATEMENTS—WITNESSES—IMPEACHMENT—DISCRETION.

Prior consistent statements may not be introduced to rehabilitate a witness whose credibility has been attacked, and a prior consistent statement of a witness who has not been impeached may not be introduced because, in the absence of an attack

REFERENCES FOR POINTS IN HEADNOTES
[1] 23 Am Jur 2d, Depositions and Discovery § 302 *et seq.*
[2, 3] 58 Am Jur, Witnesses § 773.
[4] 58 Am Jur, Witnesses § 818.
[5, 6] 29 Am Jur 2d, Evidence §§ 598, 601.
[7, 8] 29 Am Jur 2d, Evidence §§ 688, 689.

upon a witness' credibility, no sustaining evidence is allowed; however, admission of a prior consistent statement is not reversible error except in a clear case of abuse of discretion.

5. EVIDENCE—NEGLIGENCE—PRIOR CONDUCT—RELEVANCE.

The most important factor in determining the admissibility of evidence concerning the manner in which a participant in an accident was driving a vehicle before he reached the scene of the accident is the degree of probability that the conduct continued until the accident occurred, as against the objection that the testimony is too remote to be relevant.

6. EVIDENCE—NEGLIGENCE—PRIOR CONDUCT—RELEVANCE.

Evidence in a negligence case that a defendant was speeding shortly before an accident occurred was admissible where that prior conduct was the same conduct said to be responsible for the accident.

7. EVIDENCE—PLEADING—AMENDMENT—COURT RULES.

A party desiring admission of evidence and amendment of his pleadings to conform to the evidence must satisfy the court that the amendment and the admission of the evidence will not prejudice the opposing party in maintaining his action or defense upon the merits, where the evidence is objected to at trial on the ground that the evidence is outside the issues in the pleadings (GCR 1963, 118.3).

8. EVIDENCE—PLEADING—AMENDMENT—PRIOR CONDITION.

Admission of a doctor's testimony, by deposition, that a plaintiff's pre-existing condition was aggravated by an accident and granting a post-trial motion to amend the complaint to conform to that proof were proper where the defendant knew of the evidence, was on notice that the plaintiff would attempt to use it, was not surprised by its introduction, had the opportunity to cross-examine the doctor at the deposition, and did not request another opportunity to cross-examine the doctor at trial, and where the admission of such evidence exhibits neither bad faith nor actual prejudice toward the defendant.

Appeal from Gratiot, Leo W. Corkin, J. Submitted Division 3 February 7, 1975, at Grand Rapids. (Docket No. 19553.) Decided May 28, 1975. Leave to appeal applied for.

Complaint by Patricia A. Woodrow and Steven

L. Woodrow against Wayne Johns and Michael L. Baird for damages arising out of an automobile accident. Judgment for plaintiffs. Defendant Johns appeals. Affirmed.

*Gray, Thompson & Taylor, P. C.,* for plaintiffs.

*Fortino, Plaxton & Moskal,* for defendant Johns.

Before: BRONSON, P. J., and M. F. CAVANAGH and D. F. WALSH, JJ.

BRONSON, P. J. This case concerns an August 15, 1969 automobile accident. A jury found for plaintiffs-appellees, Patricia and Steven Woodrow, and awarded them damages after determining that the combined negligence of defendant, Michael Baird, and defendant-appellant, Wayne Johns, caused the Woodrows' injuries. Johns appeals by right from the January 31, 1974 judgment entered pursuant to the jury verdict, asserting four errors and demanding a new trial. Baird has not appealed.

## I.

On February 20, 1973 Johns filed a formal request for admissions pursuant to GCR 1963, 312. This request, which was directed to codefendant Baird, concerned an accident report which Baird had given to a state police investigator shortly after the accident. It demanded affirmations or denials of the following statements:

"1. Do you admit that the attached document of three pages is a true and exact copy of a statement made by Michael Leroy Baird on 8-19-69 concerning the accident which is the subject matter of the above entitled suit?
"2. Do you admit that the initials appearing at the bottom of pages one and two of the attached document

are in the handwriting of defendant Michael Leroy Baird?

"3. Do you admit that the signature that appears on page three of the document is in the handwriting of defendant Michael Leroy Baird?

"4. Do you admit that the facts recited in the statement were believed to be true, by defendant Michael Leroy Baird, at the time of giving of the statement?"

Baird never responded to the request for admissions.

Johns' request was proper. It was directed only to the "genuineness of [a] relevant document described in and exhibited with the request" and to "the truth of [a] relevant matter * * * of fact". GCR 1963, 312.1.[1]

Confronted with a proper request for admissions, Baird was required to either (1) admit the truth of the statements, (2) deny their truth, (3) explain why he could not admit or deny them, or (4) object to them in writing. GCR 1963, 312.1. His failure to respond constitutes an admission of the truth of the statements contained in the request. GCR 1963, 312.1, *Pigorsh v Fahner,* 386 Mich 508, 518; 194 NW2d 343 (1972) (dissenting opinion), *Howard v Melvindale,* 27 Mich App 227, 237 n 8; 183 NW2d 341 (1970).[2]

---

[1] Had Johns requested Baird to vouch for the truth of the opinions and conclusions expressed in the accident report, the request would have been improper. *Fredericks v General Motors Corp,* 48 Mich App 580, 587–589; 211 NW2d 44 (1973).

[2] *See also, John Mohr & Sons v Apex Terminal Warehouses, Inc,* 422 F2d 638 (CA 7, 1970), *Jackson v Riley Stoker Corp,* 57 FRD 120 (ED Pa, 1972), *Balistrieri v Holtzman,* 55 FRD 470 (ED Wisc, 1972).

The authorities suggest that a failure to respond to even *improper* requests should be deemed an admission. *See, e.g.,* 8 Wright and Miller, Federal Practice and Procedure, § 2259; 2A Barron and Holtzoff, Federal Practice and Procedure, § 834. The courts have been slow to adopt this suggestion, however. *See, e.g., Pickens v Equitable Life Assurance Society of the United States,* 413 F2d 1390 (CA 5, 1969), *Williams v Krieger,* 61 FRD 142 (SD NY, 1973), *Adley Express Co v Highway Truck Drivers,* 349 F Supp 436 (ED Pa, 1972), *General*

However, Baird was allowed by the trial judge to contradict in his testimony before the jury one of the statements he was deemed to have admitted by failing to respond to the request for admissions. Over vigorous objection and contrary to his admission that he had "read the above three pages" of the accident report, Baird was permitted to state: "I glanced at it [the report]. I didn't read it in its entirety because I can't read it." This was error. Baird was bound by the admission he had made pursuant to GCR 1963, 312.1, and should not have been permitted to contradict that admission at trial.

The error does not warrant reversal of the jury's verdict and new trial, however, for several reasons.

First, the statement contradicted concerned a subordinate, tangential matter. The whole accident report was read to the jury, and the accuracy of those portions which were most likely to call into question the account of the accident Baird offered at trial was never denied by him. He disputed only the fact that he had read the report before signing it. He never denied the truth of the other facts, or even the opinions and conclusions, reported. Johns' purpose in introducing the accident report was not seriously undermined by allowing Baird to explain that he didn't read the report before signing it when Baird at the same time admitted the truth of its contents.

Second, one effect of Baird's contradiction was plainly helpful to Johns. In claiming that he hadn't read the report before adopting it as his own, Baird revealed a lack of concern for the accuracy of statements attributed to him which,

_Accident Fire & Life Assurance Corp v Cohen,_ 203 Va 810; 127 SE2d 399 (1962).

for whatever it was worth, served to impeach his testimony. And since Baird's various accounts of the accident, once set side by side and explained,[3]

---

[3] Baird's first account was given to the investigating officer at the scene. There he explained (according to both Baird and the investigating officer) that he was in the process of passing the Woodrow vehicle on south US-27 when another vehicle came up suddenly behind him. Baird "pulled over to get out of its way" and in the process caused the Woodrow vehicle to run off the road. A few days later Baird gave a more detailed statement to the investigating officer, which was transcribed by the officer and became the accident report referred to above. It included the following pertinent observations:

"I was traveling south on US-27, which is an X-way. It has two lanes in both the north and south direction. I was originally in the right hand lane, traveling 70 m.p.h., when I came up on the Toyota. I passed the Toyota, still doing 70, as the car was going about 65. I was in the passing lane, and about one car-length in front of the Toyota. I looked into my rear view mirror and saw a car coming up in the passing lane at a high rate of speed. He slowed down behind me, or otherwise he would have hit me. This other car maintained approximately my speed, at less than two car-length [sic] behind me. I speeded up to about 72 miles an hour, for no more than 10 seconds, when I pulled over into the right hand lane. * * * As I stated previously the car behind me slowed slowed [sic] up and maintained my speed, or otherwise he would have hit me. I turned into the right hand lane and did not see the Toyota as I did so. He was in a blind spot, where I couldn't see him."

Then at a deposition and later at trial Baird's account was more fully developed and was accurately summarized by the trial judge after the close of the proofs:

" * * * Mr. Baird was southbound at about seventy miles per hour near the Tyler Road overpass when he observed plaintiffs in a small Toyota automobile ahead in the right-hand lane; that plaintiffs were traveling about 65 miles per hour; that Mr. Baird looked in his side mirror and observed that the left lane was clear for traffic all the way back to a curve some distance away; that Mr. Baird operated his left turn signal and then moved to the left lane to pass the Toyota. * * * [T]hat while passing, Mr. Baird looked in his rearview mirror and saw the defendant Johns in a Ford approaching in the left lane at ninety to 100 miles per hour; that Mr. Baird made approximately three observations of defendant Johns in his mirror, and defendant Johns did not appear to slow down; that Mr. Baird accelerated slightly, and because he feared that he was about to be struck in the rear of his automobile by the speeding Johns vehicle, made a gradual move to enter the right lane and get out of the defendant Johns' way; that when he made the gradual move to the right, Mr. Baird's rear bumper was approximately one-car length ahead of plaintiffs' front bumper; that he operated his right turn signal as he moved to the right. Further, Mr. Baird claims that there was ample room between his car and that of the plaintiffs so that an accident could have been avoided. He further claims he was placed in an emergency situation

appeared to place all the blame on Johns, any evidence tending to call into question Baird's abilities to perceive, remember and accurately report events would assist Johns in his effort to avoid liability.

Third, Johns himself "opened the door" to Baird's statement that he did not read the accident report before signing it. Baird was allowed to contradict this last sentence of the accident report only after Johns' attorney had elicited from him the fact that he couldn't read the handwritten report. Johns invited the very error now complained of by pursuing a line of questioning which made it very clear not only that Baird did not read the accident report before signing it, but that he could not do so. "The door having thus been opened, [Johns] is in no position to complain that [Baird] sought to, and did, elicit from the same witness additional facts relating to" the same issue. *Corkins v Corkins,* 358 Mich 691, 695; 101 NW2d 362 (1960), see also, *LaForest v Grunow,* 43 Mich App 254, 257; 204 NW2d 355 (1972).[4]

Finally, Johns does not suggest that he was unable to call to the witness stand the investigating officer who had prepared the accident report to ask him whether Baird had in fact read the report before signing it. This very officer had appeared

---

not of his own making by the approach of defendant Johns from his rear at 90 to 100 miles per hour; that the action of defendant Johns placed Mr. Baird in fear of his safety and so forced him to move out of defendant Johns' way * * * ."

The statements in the accident report were explained by Baird as the conclusions he formed on the basis of what had actually happened. His later account was said to describe what he had observed and what he thought was *going to happen* when he saw the Johns' vehicle approaching him from behind. Seen in this light, Baird's various accounts can be made consistent with one another.

[4] For additional authority, *see State v Maggard,* 104 Ariz 462; 455 P2d 259 (1969), *Gaines Bros Co v Gaines,* 176 Okla 576; 56 P2d 869 (1936), 1 Wigmore, Evidence (3d ed), § 18, p 345 n 34.

under subpoena and testified earlier in the trial. Johns' failure to make any effort to secure the officer's presence supports our conclusion that Johns had not lost the opportunity to prove at trial what had previously been admitted pursuant to the court rule.[5]

We hold that no reversible error was committed in allowing Baird to contradict at trial an admission which had resulted from his failure to respond to a request for admissions pursuant to GCR 1963, 312.1.[6]

II.

Baird was permitted, over objection, to testify that the following statement was made by him some six or seven days after the accident:[7]

"Yes, I passed them and when I was passing him I looked in the rear view mirror and I saw a car, I seen a car coming at me behind me at a pretty good speed, and really to avoid getting hit in the rear I pulled over into

---

[5] One commentator would allow the admitting party to contradict a prior admission if his opponent had at his disposal ready means of proving the fact previously admitted. Finman, *The Request for Admissions in Federal Civil Procedure,* 71 Yale L J 371, 424 (1962).

[6] We note that the trial judge had the discretion to allow Baird to avoid the impact of the admission by contradicting it at trial:

"For good cause shown the court or a judge, *at any time,* may allow any party to amend or withdraw any admission so made on such terms as may be just." GCR 1963, 312.2. (Emphasis supplied.)

Unlike FR Civ P, 36, no motion is required to invoke the trial court's discretion.

For cases allowing withdrawal under varying circumstances, *see Ark-Tenn Distributing Corp v Breidt,* 209 F2d 359 (CA 3, 1954), *United States v Lemons,* 125 F Supp 686 (WD Ark, 1954).

Since the trial judge never exercised his discretion under the court rule, we are not called upon to decide whether allowing withdrawal under these circumstances would have been proper.

[7] This statement was made approximately two days after Baird gave his report to the investigating officer.

the lane which the Toyota was in, and I thought I was passed him, but evidently I wasn't."

Johns claimed at trial that this statement constituted improper rehabilitation. Baird disputed this, claiming instead that it served to "explain" the statements Baird had made in the accident report. We need not decide whether the statements in the accident report were prior inconsistent statements.[8] If they were, then the introduction of the prior consistent statement constituted improper rehabilitation, since in Michigan prior consistent statements cannot be used to rehabilitate a witness. *Stewart v People,* 23 Mich 63, 74 (1871).[9] If the statements contained in the accident report were not prior inconsistent statements, then Baird was obviously not impeached with a prior inconsistent statement. In that event, the admission of the prior consistent statement was error because "in the absence of an attack upon credibility no sustaining evidence is allowed". McCormick, Evidence (2d ed), § 49, p 102.

It is clear, therefore, that the prior consistent statement was inadmissible. But the error does not require reversal, because, as Justice COOLEY indicated in *Stewart, supra,* at 76:

"We think the circuit judge ought to be allowed a reasonable discretion in such cases, and that though such evidence should not generally be received, yet that his discretion in receiving it ought not to be set aside

---

[8] We note that Johns purported to introduce the accident report as substantive evidence.

[9] The only time a prior consistent statement can be admitted is where there is doubt whether the prior inconsistent statement was *made* and where consideration of the prior consistent statement would assist the jury in determining whether a prior inconsistent statement was made. *See Stewart v People,* 23 Mich 63, 74–76 (1871). This limited exception is not applicable here.

except in a clear case of abuse such as, we think, did not exist here."

Justice COOLEY's abuse of discretion test was recently reaffirmed and reinforced in *Brown v Pointer,* 390 Mich 346, 352; 212 NW2d 201 (1973): "We are not inclined to reverse a ruling admitting a consistent statement." We cannot, in view of this binding authority, grant a new trial on the basis of the trial judge's erroneous admission of a consistent statement.

### III.

Mr. and Mrs. Harris, who witnessed the accident, were allowed to testify to certain observations they had made concerning the speed of Johns' vehicle prior to the accident. They stated that they were driving south on US-27 on the day of the accident. Just as they went by a rest area, a car which they identified as driven by Johns passed them at a speed of 90-100 miles per hour. They also noticed a police cruiser in the rest area. The cruiser left the rest area and began chasing Johns. Both cars were soon out of sight. About four or five miles down the road, the Harrises saw the police cruiser and Johns' car stopped on the shoulder of the highway. Some seven or eight miles farther, the Johns' vehicle again sped by them at 90-100 miles per hour. A few seconds later and several hundred feet up the road, the accident occurred.

Johns objected at trial to the introduction of the Harrises' testimony regarding the events prior to his passing them the second time, arguing that the evidence was too remote to be relevant. *Crane v Woodbury,* 41 Mich App 11; 199 NW2d 577 (1972), is cited in support of this claim.

In *Crane,* the defendant sought to introduce evidence that the plaintiff had been speeding and passing in a no-passing zone prior to his making an allegedly improper left turn in an attempt to show that plaintiff had been negligent in making the left turn. The Court, in finding the evidence inadmissible, adopted the following test from 46 ALR2d 9:

" 'In determining the admissibility of evidence concerning the manner in which a participant in an accident was driving a vehicle before he reached the scene of the accident as against the objection that the testimony is remote, *the most important factor is the degree of probability that the conduct continued until the accident occurred.'* (Emphasis added.)" *Crane, supra,* at 17.

We think the evidence is compelling that Johns' improper speeding did continue until the accident occurred. Unlike *Crane,* the prior conduct—speeding—was the very same conduct said to be responsible for the accident. That Johns stopped for a time and then continued does not destroy the reasonableness of the inference establishing a pattern of conduct where the reason he stopped was that he was forced by the state police to do so. Under these circumstances, it was not error to admit the evidence of prior speeding.

## IV.

The Woodrows' complaint as of the time of trial contained the following paragraph:

"That as a result of the accident, the plaintiff, Patricia Ann Woodrow, has aggravated a possible pre-existing condition whereby the connective tissue of her joints and in particular her spinal column contain

greater elasticity than normal. Said pre-existing condition thereby causing her greater pain and suffering and disability as has been set forth herein as contrasted to the absence of this increased elasticity."

At trial, the Woodrows were allowed to introduce evidence that the accident had aggravated other pre-existing conditions which had not been pled in the original complaint. The trial judge also permitted a post-trial amendment to conform to this proof, as follows:

"That as a result of the accident, the plaintiff, Patricia Ann Woodrow, has aggravated pre-existing weaknesses to her back, spinal column, joints, muscles, nerves and ligaments, said aggravation thereby causing her greater pain and suffering and disability as has been set forth herein."

Johns claims that by admitting the evidence and allowing the amendment to conform thereto the trial judge committed reversible error. We disagree.

In order to justify an amendment to conform to the evidence where the evidence is objected to at trial, "the party desiring amendment [must] satisf[y] the court that the amendment and the admission of such evidence would not prejudice the objecting party in maintaining his action or defense upon the merits". GCR 1963, 118.3.

Johns argues that he was prejudiced because the testimony allowed—which was by deposition—had not been subject to cross-examination at the time of the deposition and it was then too late to cross-examine. In fact, Johns chose not to cross-examine at the deposition as to these matters though he had an opportunity to do so. His attorney candidly admitted that the reason he decided not to cross-

examine was that the matters testified to were not specifically alleged in the complaint.

Johns obviously knew of the evidence. He was accordingly on notice that the Woodrows would attempt to use it. He was not surprised by its introduction and did not request an opportunity to cross-examine the doctor at trial. We find neither bad faith nor actual prejudice in the admission of the evidence. Johns was still able to defend on the merits. We do not think that " 'justice would not be served by allowing the amendment' ". *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649, 658; 213 NW2d 134 (1973). Accordingly, we hold that the admission of the testimony and the granting of the motion to amend the complaint to conform to that proof were proper.

Affirmed. Costs to appellees.