PEOPLE v COLES

OPINION OF THE COURT

1. EVIDENCE—CRIMINAL LAW—PRIOR CONSISTENT STATEMENTS—WIT-
   NESSES—CREDIBILITY—RECENT FABRICATION.

   It was not an abuse of discretion for a trial judge to admit
   evidence in a trial for armed robbery of a prior consistent
   statement by the victim which contained a description of the
   defendant matching that contained in the victim's in-court
   testimony and offered solely for the purpose of rebutting an
   implicit defense charge of recent fabrication bearing upon the
   victim's identification of the defendant.

2. EVIDENCE—WITNESSES—CONSISTENT STATEMENTS—SUBSTANTIVE
   EVIDENCE.

   Prior consistent statements of a witness are generally not admis-
   sible as substantive evidence, but may be allowed a limited
   admissibility for the purpose of supporting the credibility of a
   witness, particularly to show that a witness whose testimony
   has allegedly been influenced told the same story before the
   influence was brought to bear.

3. EVIDENCE—WITNESSES—PRIOR CONSISTENT EVIDENCE—PRIOR IN-
   CONSISTENT EVIDENCE.

   A prior consistent statement of a witness may be admitted where
   a prior inconsistent statement has been put in evidence, and
   the prior consistent statement is of such character as to be
   probative upon the issue of whether or not the prior inconsist-
   ent statement was in fact made.

4. APPEAL AND ERROR—ROBBERY—EVIDENCE—VICTIM'S IDENTIFICA-
   TION—TESTIMONY—MOTION TO SUPPRESS—OBJECTIONS.

   The question of whether a robbery victim's in-court identification

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 3, 12] 29 Am Jur 2d, Evidence § 371 *et seq.*
[4, 6] 5 Am Jur 2d, Appeal and Error § 602.
[5] 21 Am Jur 2d, Criminal Law §§ 313, 314.
[7] 4 Am Jur 2d, Appeal and Error § 944.
[8] 75 Am Jur 2d, Trial §§ 17–24.
[9, 10, 11] 75 Am Jur 2d, Trial §§ 786, 809.

testimony was erroneously admitted in a trial for armed robbery has not been properly preserved for appellate review where the defendant failed to move for suppression of the testimony and failed to object to it.

5. CRIMINAL LAW—PHOTOGRAPHIC IDENTIFICATION—PRESENCE OF COUNSEL—PRECUSTODIAL PHOTOGRAPHIC SHOWINGS—CUSTODY—PROBABLE CAUSE—NEUTRAL CHARACTER.

A defendant's contention that an armed robbery investigation had focused on him thus entitling him to have counsel present at a precustodial photographic show-up where the robbery victim identified the defendant is without merit where: the defendant was not in custody when the showing occurred, and the officer conducting the showing did not have probable cause to arrest the defendant when the showing occurred; the character of the photographic identification procedure was sufficiently neutral where the victim was shown 11 pictures from a high school yearbook which depicted the defendant and ten other black males of like age.

6. APPEAL AND ERROR—FAILURE TO RAISE ISSUE—MANIFEST INJUSTICE.

Failure to raise an issue at the trial court level generally precludes appellate review in the absence of manifest injustice.

7. APPEAL AND ERROR—CRIMINAL LAW—JURY—IMPARTIAL JURY—IMPROPER CONTACT WITH JUROR—PREJUDICE—INFERENCE OF PREJUDICE.

Reversal is not warranted when a defendant argues that he has been denied an impartial jury because of an improper contact with a juror unless prejudice or facts clearly establishing an inference of prejudice are shown.

8. CRIMINAL LAW—JOINT TRIALS—SEVERANCE—APPEAL AND ERROR—PREJUDICE—STATUTES.

Severance is a matter resting in the trial judge's discretion; to be entitled to reversal of a conviction for an alleged improper joinder for trial prejudice resulting from the joinder must be shown (MCLA 768.5; MSA 28.1028).

9. CRIMINAL LAW—JURY INSTRUCTIONS—REQUESTED INSTRUCTIONS—PLEA OF CODEFENDANT—CHANGING PLEAS.

A trial court must instruct the jury, if a request is made, that the plea of a codefendant is not to be considered in determining the guilt of the remaining defendant or defendants where a codefendant changes his plea after participating in the selection of the jury and later testifies before the same jury.

10. Criminal Law—Jury Instructions—Unrequested Instructions
—Codefendant's Plea—Changing Pleas—Jury—Evidence—
Full Disclosure—Accomplice's Testimony.

Manifest injustice to a defendant is not apparent from the record where a trial judge failed to give an unrequested jury instruction regarding the effect of a codefendant's decision to change his plea after the codefendant participated in the selection of the jury and later testified before the same jury where: there was full disclosure to the jury of all of the circumstances affecting the codefendant's testimony, the court instructed the jury that, although other defendants were named, their guilt was not for the jury to decide and, therefore, they were only to consider the action of such other parties as they related to the defendant, and where the court additionally instructed the jury that careful scrutiny should be given to testimony of an alleged accomplice because of his possible interest in the outcome.

Dissent by T. M. Burns, J.

11. Criminal Law—Codefendants—Changing Pleas—Jury Instructions—Unrequested Instructions—Requested Instructions—Jury—Appeal and Error—Manifest Injustice.

*A trial court must instruct the jury, if a request is made, that the plea of a codefendant is not to be considered in determining the guilt of the remaining defendant or defendants where a codefendant changes his plea after participating in the selection of the jury and later testifies before the same jury; a failure to give such instruction is erroneous, even though no request was made, where under the particular circumstances of a trial it cannot be said that the failure to instruct on the effect of the codefendant's plea of guilty did not result in a manifest injustice.*

12. Witnesses—Prior Consistent Statements—Impeachment—Prior Inconsistent Statements.

*A prior consistent statement of a witness is admissible where the witness is impeached by a prior inconsistent statement and there is some question as to whether that prior statement was made.*

Appeal from Genesee, Donald R. Freeman, J. Submitted June 8, 1977, at Lansing. (Docket No. 29343.) Decided October 24, 1977. Leave to appeal applied for.

Bruce L. Coles was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Edwin R. Brown,* Assistant Prosecuting Attorney, for the people.

*Larry G. Sharp,* for defendant.

Before: Danhof, C. J., and T. M. Burns and A. E. Keyes,* JJ.

Danhof, C. J. Defendant was convicted by a jury of armed robbery, MCLA 750.529; MSA 28.797, and sentenced to 15 to 25 years imprisonment. He now appeals by right. The facts are stated within as they relate to the questions raised on appeal.

I

Defendant claims that the trial judge erred reversibly in permitting a police officer to relate in his testimony the description of defendant that he obtained from the victim, relying on *People v Hallaway,* 389 Mich 265, 275–279; 205 NW2d 451 (1973). The victim, Alonzo Carelock, outlined in his own testimony his description to the police of defendant's appearance at the time of the robbery, and the police officer's testimony matched Carelock's recollection of the description he gave. Over defense objection, the trial judge admitted the police officer's testimony "to indicate there is no conflict in what Carelock said on an earlier occasion as compared to what was testified to here in court", and cautioned the jury that the officer's

---

* Circuit judge, sitting on the Court of Appeals by assignment.

testimony was being admitted "only for that purpose, so that the jury can evaluate the credibility of an earlier witness, without at the same time indicating that by recitation by this witness of what a victim told him or is said to have told him, that this indicates its honesty or truthfulness".

Essential to a complete understanding of our view of this claim of error are certain aspects of the cross-examination of Carelock by defense counsel. After first eliciting from Carelock admissions that he had been discharged from his employment as manager of the store some time after the robbery because of his inability to control cash and inventory shortages, and that he had seen defendant in the store as a customer at least once before the robbery, defense counsel questioned Carelock about an alleged courthouse confrontation between Carelock and two friends of defendant:

"Q. Do you remember somebody directing a question to you as to why you picked Mr. Coles, that you felt that he did this? Do you remember anybody asking you that question?

"A. Did anybody ask me a question?

"Q. Yes.

"A. I remember some fellows coming up to me and talking to me and I said, 'Well, if you know anything, just tell the detective.' That's all I said. I didn't make no statements.

"Q. *Did you ever say that the reason you picked Mr. Coles was because the dairy expected it, or because you'd lose your job if you didn't pick somebody?*

"A. No.

"Q. You never said that?

"A. No.

"Q. You're sure?

"A. Yes." (Emphasis added.)

The character of this inquiry into the credibility of

Carelock's identification of defendant went beyond a mere probing for prior inconsistent statements, such as occurred in *Hallaway, supra,* at 276. Defense counsel attempted to establish, first through cross-examination of Carelock, and later by the direct testimony of a defense witness, one Al Green, that Carelock had fabricated his identification of defendant after the robbery in order to save his job. The implicit claim of recent fabrication raised by the defense thus renders the rule requiring reversal in *Hallaway*[1] inapplicable to this case:

"Generally, consistent statements of a witness are not admissible as substantive evidence. *People v Hallaway,* 389 Mich 265, 276; 205 NW2d 451 (1973); *Dundas v Lansing,* 75 Mich 499, 502; 42 NW 1011; 13 Am St Rep 457; 5 LRA 143 (1889); *Brown v People,* 17 Mich 429, 435; 97 Am Dec 195 (1868). It has been said, however, that they are often 'allowed a limited admissibility for the purpose of supporting the credibility of a witness, *particularly to show that a witness whose testimony has allegedly been influenced told the same story before the influence was brought to bear.*' McCormick, Evidence (2d ed), § 251, p 604. The authors of this recent revision of McCormick assert that the trend of decision supports the admission of consistent statements; they reason that '[t]he witness can be cross-examined fully. No abuse of prepared statements is evident. The attack upon the witness has opened the door.' McCormick, Evidence, *op cit.*

"In *People v Hallaway, supra,* p 277 it was recently noted: 'Justice COOLEY, in *Stewart v People,* 23 Mich 63 [9 Am Rep 78] (1871), held that a prior consistent statement of a witness may be admitted where a prior inconsistent statement has been put in evidence, and the prior consistent statement is of such character as to

---

[1] If such it is; Justice BRENNAN was joined in his opinion by only one of the other four justices who participated in the *Hallaway* decision. Two other justices concurred with Justice WILLIAMS' separate opinion, which, although it approved the result, is silent on the issue of admission of prior consistent statements.

be probative upon the issue of whether or not the prior inconsistent statement was in fact made.'

"The conclusion that Hernandez's credibility and testimony had been challenged by a prior inconsistent statement and that the consistent statement was admissible as tending to rehabilitate his credibility is supported by the record, reason and authority. We are not inclined to reverse a ruling admitting a consistent statement. *Stewart v People, supra,* p 76." *Brown v Pointer,* 390 Mich 346, 351–352; 212 NW2d 201 (1973). (Emphasis added.) (Footnote omitted.)

We conclude that under the circumstances of this case it was not an abuse of discretion for the trial judge to admit evidence of a prior consistent statement by Carelock containing a description of defendant matching that contained in his testimony and offered solely for the purpose of rebutting an implicit defense charge of recent fabrication bearing upon Carelock's identification of defendant.[2] Carelock's prior consistent statement tended to show that his description of defendant remained unchanged after he was allegedly subjected to pressure by his employer to identify someone, and thus tended to rehabilitate his credibility after the defense charge of recent fabrication. Under such circumstances, admission of the prior consistent statement did not constitute an abuse of discretion. See *Woodrow v Johns,* 61 Mich App 255, 262–264; 232 NW2d 688 (1975).[3]

[2] Indeed, under the Proposed Michigan Rules of Evidence, 801(d)(1)(B) Carelock's prior description, which was "consistent with his testimony and [was] offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive," would not be classed as hearsay, since Carelock testified at trial and was subject to cross-examination.

[3] Our holding makes it unnecessary to rest our decision solely on the fact that admission of the description, as related by the officer, constituted harmless error because the same facts had been shown by Carelock's testimony. *See, People v King,* 58 Mich App 390, 395; 228 NW2d 391 (1975), *People v Vargas,* 50 Mich App 738, 741–742; 213

II

Defendant next contends that the trial court erred reversibly in failing, *sua sponte,* to suppress Carelock's in-court identification of defendant because Carelock had previously chosen defendant's photograph from 11 high school yearbook photographs shown to him at a precustodial photographic show-up at which defense counsel was not present, and because the lineup at which Carelock identified defendant was impermissibly suggestive. We find no merit in these claims.

First, because defendant failed to move for suppression of Carelock's in-court identification and also failed to object to it the question of whether Carelock's identification testimony was erroneously admitted has not been properly preserved for appellate review. *People v Moss,* 397 Mich 69; 243 NW2d 254 (1976).

Secondly, we find no factual support for either of defendant's claims. Defendant was not in custody when the photographic show-up occurred. "It is the fact of custody that requires implementation of the *Franklin Anderson* rule * * * ." *People v [James] Anderson,* 391 Mich 419, 422; 216 NW2d 780 (1974). Nor did the officer who conducted the show-up have probable cause to arrest defendant when he showed the photographs to Carelock; instead, he had investigated two worthless leads and was pursuing a third when he showed the yearbook to Carelock. Under these circumstances, it is clear that defendant's contention that the investigation had "focused" on him, thus entitling him to have counsel present, is entirely without merit. *People v Lee,* 391 Mich 618, 625; 218 NW2d

NW2d 848 (1973), *lv den,* 392 Mich 815 (1974), *People v Harrison,* 49 Mich App 546; 212 NW2d 278 (1973), *lv den,* 392 Mich 779 (1974).

655 (1974), *People v Wright,* 71 Mich App 40, 48;
246 NW2d 422 (1976). In addition, there is nothing
in the record to suggest that the yearbook show-up
was unfairly conducted, where the yearbook pages
in question depicted defendant and 10 other black
males of like age. The character of this procedure
was sufficiently neutral. *People v Belenor,* 71 Mich
App 10, 13; 246 NW2d 355 (1976).

Similarly, we note that the lineup, at which
counsel was present, was conducted three weeks
after the crime occurred, time enough to grow or
remove facial hair. We find nothing impermissibly
suggestive about this lineup, and note, in addition,
that the record contains facts more than sufficient
to warrant a conclusion that Carelock's identifica-
tion of defendant had an independent basis.[4]

These claims of error are without merit.

## III

A codefendant who had participated in selecting
the jury pled guilty to a lesser charge before any
testimony was presented. The codefendant was
indorsed as a prosecution witness and testified
against defendant. Defendant now claims that the
trial judge erred reversibly in failing, *sua sponte,*
to discharge the jury. Insofar as we can determine,
the question of whether a jury selected with the
participation of a codefendant should be dis-
charged *sua sponte* when that codefendant pleads
guilty and appears as a witness for the prosecution
is one of first impression in this state.

Two factors weigh heavily in our decision. First,

---

[4] Carelock observed defendant at close range for at least a minute,
watched from the back of the brightly lit store for approximately ten
minutes as defendant operated the cash register while his confeder-
ates waited on customers, and, further, had seen defendant in the
store as a customer on at least one prior occasion.

defendant failed to object to the jury's composition after his codefendant pled guilty. Failure to raise an issue at the trial court level generally precludes appellate review in the absence of manifest injustice. *People v Carroll,* 396 Mich 408, 415–416; 240 NW2d 722 (1976). Secondly, defendant has shown no prejudice that inured to him as a result of his codefendant's participation in the jury selection, nor any facts establishing an inference of prejudice. To the contrary, defendant fully participated in the jury selection, and fails now even to allege that he would have retained any of the jurors challenged by his codefendant. When a defendant argues that he has been denied an impartial jury because of an improper contact with a juror, reversal is not warranted unless prejudice, or facts clearly establishing an inference of prejudice are shown. *People v Schram,* 378 Mich 145, 160; 142 NW2d 662 (1966). On this record, we can only conclude that defendant's claim of error is too speculative to warrant reversal.

Similarly, defendant's claim that the trial judge should have *sua sponte* severed his trial from that of his codefendant is meritless. Since, as a result of his codefendant's guilty plea, defendant was tried separately, there can be no claim of inconsistent defenses, or of impermissibly pitting one defendant against another. Severance is a matter resting in the trial judge's discretion, and to be entitled to reversal of his conviction defendant must show prejudice resulting from the joinder. Even if defendant and his codefendant, who participated in the same crime, had been tried separately, the same issues would have been decided upon submission of the same evidence. The trial court committed no abuse of discretion in failing to sever the trials. *People v Carroll, supra,* at 414, *People v*

*Schram, supra,* at 156–157, see MCLA 768.5; MSA 28.1028.

Although defendant's other assignments of error are so clearly meritless as not to warrant discussion, we must address a question not briefed by the parties, but raised *sua sponte* by Judge T. M. BURNS in his dissent, because it is one of significance to the Michigan trial bench and bar.

Judge BURNS correctly states the applicable rule: "When a codefendant changes his plea after participating in the selection of a jury and later testifies before that same jury * * * [it is necessary for] the trial court to instruct the jury that the plea of the codefendant is not to be considered in determining the guilt of the remaining defendant or defendants *if a request is made*". (Emphasis added.) See *Hudson v North Carolina,* 363 US 697; 80 S Ct 1314; 4 L Ed 2d 1500 (1960). Defendant in this case requested no such instruction.[5] Although the decision in *Hudson, supra,* turned ultimately on a denial of due process flowing from a denial of assistance of counsel that placed defendant in a situation "beyond a layman's ken" when his codefendants pled guilty in the jury's presence, *Hud-*

---

[5] The trial court did instruct the jury as follows, however: "As you note, other defendants are named. Their innocence or guilt as such is not for you to decide. Their alleged actions might be, but only as it relates to alleged misconduct on the part of the defendant in this case; and therefore, we ask you to consider the action of other parties as it may relate to Mr. Coles, but not decide innocence or guilt of any other persons other than Coles." In *United States v Beasley,* 519 F2d 233, 241 (CA 5, 1975), *vacated on other grounds,* 425 US 956; 96 S Ct 1736; 48 L Ed 2d 201 (1976), *remanded on other grounds,* 535 F2d 293 (CA 5, 1976), the Court considered it significant that the trial judge had given an instruction quite similar to the one given by the trial judge in this case in concluding that reversal was not warranted. In *Osborne v United States,* 371 F2d 913, 924 (CA 9, 1967), *cert den,* 387 US 946; 87 S Ct 2082; 18 L Ed 2d 1335 (1967), the Court held that instructions comparable to the one above quoted, to the effect that "appellant stood alone as a defendant, and that his acts only were to be judged," were sufficient, particularly since defendant had proffered no instruction of his own.

*son, supra,* at 704; 80 S Ct at 1318; 4 L Ed 2d at 1505, in subsequent cases involving circumstances having a potential for prejudice as great as in the present case the Federal courts have refused to premise reversal upon the trial judge's failure to give the appropriate instruction *sua sponte.* In *Bearden v United States,* 403 F2d 782 (CA 5, 1968), *cert den,* 393 US 1111; 89 S Ct 920; 21 L Ed 2d 808 (1969), defendant was indicted and tried with his son, who pled guilty *in the jury's presence* after the trial commenced, admitting participation in the kidnapping, interstate transportation of a stolen airplane, and obstruction of commerce of which the jury thereafter convicted the defendant. The court conceded that the combination of the jury's observation of the son's plea[6] and the failure to give a cautionary instruction *"might have"* constituted plain error but for defendant's failure to object or move for mistrial, *id.* 786 (emphasis in original), but concluded that the failure to give the instruction was harmless error. In a more recent case, *United States v Beasley,* 519 F2d 233 (CA 5, 1975), *vacated on other grounds,* 425 US 956; 96 S Ct 1736; 48 L Ed 2d 201 (1976), *remanded on other grounds,* 535 F2d 293 (CA 5, 1976), defendant was

---

[6] Our brother considers it irrelevant that in this case the codefendant's plea was taken outside the presence of the jury, since he testified before the jury. Although we will concede that each situation (guilty plea in the presence of the jury not followed by testimony or guilty plea outside the jury's presence followed by testimony against defendant before the jury) carries great potential for prejudice, we cannot agree that the jury's absence during the plea is irrelevant. Among the purposes of GCR 1963, 785.7 are to insure that the plea is knowing, voluntary and accurate, to impress upon the defendant the gravity of the step he takes when he waives the constitutional rights surrounding trial, and to establish a factual basis for the plea. We are not so certain that a jury would not be more profoundly affected by observing a solemn plea proceeding than by mere testimony by a guilty-pleading codefendant who is subjected to cross-examination to bring out his bias and interest, as in this case. The theoretical distinction between the two situations has, in our opinion, at least marginal relevance.

the only one of four defendants remaining at the end of the trial as a result of guilty pleas by the other three during the course of the trial as evidence against them mounted. Noting that the "possibilities of prejudice are clearly present," the Court concluded:

"The thorough efforts of appellate counsel aided by calm reflection and hindsight, while demonstrating the propriety of a cautionary instruction, *cannot supply the lack of a timely request for it.* If such a request had been made it would have been reversible error to refuse to give it. However, we may reverse for the trial judge's failure to instruct *sua sponte* only upon a finding of plain error. * * * In this case, Beasley's counsel may have opted not to request such an instruction as a matter of trial tactics, feeling that to emphasize the admitted guilt of those others named in the indictment would have been even more prejudicial." *Beasley, supra.* at 240. (Emphasis added.)

Our learned brother would premise reversal in this case upon an inability to say that the trial judge's failure to give the unrequested instruction did not result in a manifest injustice. With this conclusion we cannot agree. In addition to the cautionary instruction given by the trial judge already noted,[7] the trial judge also instructed the jury that:

"With respect to testimony of an accomplice or an alleged accomplice, the testimony of such an alleged accomplice must be carefully scrutinized to ascertain to what extent it is corroborated by other testimony or other witnesses or circumstances. And that it will depend for its weight to what extent you believe it has been corroborated. It should be received by you with caution and care, because the interest of that witness may be such as to affect his testimony, and it may have

---

[7] *See* fn 5, *supra.*

some interest in the outcome of the trial and any desire
that he may have to color his testimony."

The facts that the codefendant had pled guilty to a
reduced charge of attempted armed robbery, and
that he had done so under a plea agreement
requiring him to testify against defendant, were
revealed by the prosecutor on direct examination
and thoroughly explored by defense counsel on
cross-examination. In view of the full disclosure to
the jury of all of the circumstances affecting the
codefendant's testimony and the cautionary in-
structions given by the trial judge, we conclude
that no manifest injustice is apparent from the
record.

In addition, we think it improvident for this
Court, in effect, to impose upon trial judges a duty
to instruct *sua sponte* on the effect of a codefend-
ant's guilty plea whenever the potential for injus-
tice is as attenuated as it is in this case. In view of
the factors noted above militating against a find-
ing of manifest injustice, the rule advanced by the
dissent would be tantamount to a requirement
that the instruction be given in every case, *sua
sponte.*[8]

---

[8] In fact, a rule requiring the instruction to be given *sua sponte*
would at least be certain of application, although equally unaccepta-
ble. Under the "manifest injustice" rule proposed by the dissent, a
trial judge must, without request, take it upon himself not only to
give the instruction, but also to give it only when manifest injustice
would otherwise result. Thus a cautionary instruction would be
required not only if defense counsel requests it, but also, absent
defense request, if manifest injustice would, in the trial judge's
opinion, result if the instruction were not given. Conceivably, under
this rule, the trial judge would be required to give the instruction
even over defense objection and without request if, according to the
standards suggested by the facts of this case, the trial judge concluded
that manifest injustice would otherwise occur.

The practical problems of application of such a rule, such as the
unavailability of a transcript for the trial judge to consult in making
his determination of manifest injustice, are complemented by the
anomalous result that might flow from giving such an instruction

In addition to the minor hardship imposed upon trial judges by such a rule, the important right to select and conduct one's own defense foreseeably would be infringed thereby. The Federal rule is preferable because it puts the onus—as well as the choice—of requesting the cautionary instruction on defendant and his counsel. Our adversary system functions on the basic assumption that the parties most interested in the outcome will point out, by their motions, objections, and arguments, the correct ruling for the court. It is no remedy, but paternalism, to arrogate to the court the defense counsel's responsibility and right to request —or not request—a cautionary instruction, particularly when defense counsel could reasonably conclude, as a matter of trial tactics in a given case, that such an instruction is more prejudicial than no instruction at all.

Finally, we note that this is an issue neither raised nor briefed by the parties, and hence decided without benefit of adversary presentation. We are thus not so well equipped as the Court in *Beasley, supra,* at 240, which rejected defendant's claim of error, after "thorough" presentation by the parties, because of the lack of timely defense request for the instruction. In *Bearden, supra,* at 787, the Court quoted with approval from *Johnson v United States,* 318 US 189, 202; 63 S Ct 549, 555; 87 L Ed 704 (1943) (Frankfurter, J.):

"In reviewing criminal cases it is particularly impor-

over defense objection. It is not difficult to conceive of an appeal by defense counsel who had elected, as a matter of trial tactics, to avoid emphasizing the codefendant's guilty plea by not requesting a cautionary instruction regarding it, in which it could be forcefully argued that the defendant had actually been prejudiced by such an instruction. Indeed, *United States v Aronson,* 319 F2d 48 (CA 2, 1963), cited by the dissent, involved a claim that the trial judge's revelation of a codefendant's guilty plea, even though coupled with a proper cautionary instruction, had prejudiced the defendant.

tant for appellate courts to re-live the whole trial imaginatively and not to extract from episodes in isolation abstract questions of evidence and procedure. To turn a criminal appeal into a quest for error no more promotes the ends of justice than to acquiesce in low standards of criminal prosecution."

We do not acquiesce; neither do we find error.

The conviction is affirmed.

A. E. Keyes, J., concurred

T. M. Burns, J. *(dissenting).* After a jury trial conviction for armed robbery, MCLA 750.529; MSA 28.797, defendant was sentenced to serve 15 to 25 years in prison. I would grant a new trial.[1]

Defendant was jointly charged with two others with the armed robbery of a Sunshine Dairy Store in Flint on June 20, 1975. Defendant and codefendant Darnell Welsh, through their counsel, participated in the selection of a single jury. After the jury selection was completed, but before any witnesses were sworn, Welsh changed his plea to guilty. Welsh later testified before the same jury he had helped select, concerning his and defendant's involvement in this robbery. At no time did the court instruct the jury that Welsh's plea of guilty was to play no part in their deliberations on defendant's guilt.[2]

---

[1] In his appellate brief defendant claims the trial court was required *sua sponte* to discharge the jury when his codefendant pled guilty. Examination of the authorities in the field indicates that it is not necessary to discharge the jury or declare a mistrial. *E.g., United States v Johnson,* 451 F2d 1321 (CA 4, 1971), *cert den* 405 US 1018; 92 S Ct 1298; 31 L Ed 2d 480 (1972), *United States v McCord,* 166 US App DC 1; 509 F2d 334 (1974), *cert den,* 421 US 930; 95 S Ct 1656; 44 L Ed 2d 87 (1975). However, defendant is entitled to some action by the court. This opinion deals with the least disruptive alternative, a cautionary instruction.

[2] The trial court instructed the jury: "As you note, other defendants are named. Their innocence or guilt as such is not for you to decide.

The potential prejudice which can result from a codefendant's plea of guilty after a jury has been selected is obvious, especially where the prosecution charges that the pleading defendant and the remaining defendant were acting together. *Hudson v North Carolina,* 363 US 697; 80 S Ct 1314; 4 L Ed 2d 1500 (1960). When a codefendant changes his plea after participating in the selection of a jury and later testifies before that same jury, I would require the trial court to instruct the jury that the plea of the codefendant is not to be considered in determining the guilt of the remaining defendant or defendants if a request is made. A failure to give such an instruction, because of the substantial danger that the jury will infer the guilt of the remaining defendant from such a plea, deprives defendant of the right to an impartial jury to which he is constitutionally entitled. Const 1963, art 1, § 20.

A similar rule applies in the Federal circuits. Although it is not necessary to declare a mistrial and discharge the jury, the court must instruct the jury on the effect of the codefendant's plea. *United States v McCord,* 166 US App DC 1, 13, n 35; 509 F2d 334, 346, n 35 (1974), *cert den,* 421 US 930; 95 S Ct 1656; 44 L Ed 2d 87 (1975), *United States v Dardi,* 330 F2d 316, 333 (CA 2, 1964), *cert den,* 379 US 845; 85 S Ct 50; 13 L Ed 2d 50 (1964), *United States v Aronson,* 319 F2d 48 (CA 2, 1963), *cert den,* 375 US 920; 84 S Ct 264; 11 L Ed 2d 164

---

Their alleged actions might be, but only as it relates to alleged misconduct on the part of the defendant in this case; and therefore, we ask you to consider the action of other parties as it may relate to Mr. Coles, but not decide innocence or guilt of any other persons other than Coles."

This instruction is insufficient because it in no way informs the jury of the effect of Coles' codefendant's plea of guilty on Coles' guilt. It in no way dispels the inference the jury was likely to draw that because one defendant admitted his guilt, Coles must also be guilty.

(1963), *United States v Johnson,* 451 F2d 1321 (CA 4, 1971), *cert den,* 405 US 1018; 92 S Ct 1298; 31 L Ed 2d 480 (1972), *Fahning v United States,* 299 F2d 579 (CA 5, 1962), *Bearden v United States,* 403 F2d 782 (CA 5, 1968), *cert den,* 393 US 1111; 89 S Ct 920; 21 L Ed 2d 808 (1969), *United States v Kahn,* 381 F2d 824 (CA 7, 1967), *cert den,* 389 US 1015; 88 S Ct 591; 19 L Ed 2d 661 (1967), *Nemec v United States,* 178 F2d 656 (CA 9, 1949), *cert den,* 339 US 985; 70 S Ct 1006; 94 L Ed 1388 (1950), *Osborne v United States,* 371 F2d 913 (CA 9, 1967), *cert den,* 387 US 946; 87 S Ct 2082; 18 L Ed 2d 1335 (1967). See also *Brant v Scafati,* 301 F Supp 1374, 1379 (D Mass, 1969), *People v Sherman,* 127 Cal App 2d 230; 273 P2d 611 (1954), *People v McNaspie,* 261 App Div 657; 27 NYS2d 906 (1941).

The failure to instruct in this case was error even though no request was made. Defendant presented alibi testimony from five witnesses. Two witnesses placed defendant at the robbery; the manager of the store which was robbed and defendant's former codefendant. But, their testimony was considerably weakened on cross-examination. The jury deliberated for several hours over two days and did not reach a verdict until the manager's testimony was reread. Given these circumstances it cannot be said that the failure to instruct on the effect of Welsh's plea of guilty did not result in a manifest injustice.

One other issue merits brief discussion. During the direct examination of the manager of the store, testimony was elicited showing that the second man to enter the store, allegedly the defendant, was wearing a leopard-skin patterned T-shirt and black slacks. On cross-examination, the description of the second person to enter the store was expanded but the description of his clothing

did not vary. The manager was never asked if he had given any description of the robbers to the police.

On direct examination of the officer who answered the report of an armed robbery, the prosecutor attempted to elicit whether the manager had given a description of the robbers on the night in question. Over defense counsel's objection, he was allowed to testify that the manager had told him that the second man to enter the store was wearing a leopard-skin T-shirt and black pants.

The officer's testimony was inadmissible. A prior consistent statement of a witness is admissible if the witness is impeached by a prior inconsistent statement and there is some question as to whether that prior statement was made. *Stewart v People,* 23 Mich 63; 9 Am Rep 78 (1871). But, until the manager's description of the robber's clothing was drawn into question, the officer's testimony represented an uncalled-for attempt to bolster his credibility. *People v Hallaway,* 389 Mich 265, 276; 205 NW2d 451 (1973) (opinion of BRENNAN, J.).

In this case the description of the robber's clothing was not seriously challenged. What was disputed was whether defendant owned or was ever seen wearing such clothing. The officer's repetition of the description was therefore not prejudicial because he did not link the defendant to this clothing.